## SAFEWAY STORES, INC., v. OKLAHOMA RETAIL GROCERS ASSOCIATION, INC., ET AL.

No. 252. Argued May 19, 1959.—Decided June 22, 1959.

*Ramsey Clark* argued the cause for appellant. With him on the brief were *V. P. Crowe, Robert L. Clark* and *William L. Keller.*

*Samuel M. Lane* argued the cause for appellees. With him on the brief were *W. J. Holloway, Sr., M. A. Ned Looney* and *Robert P. Beshar.*

*Mac Q. Williamson,* Attorney General of Oklahoma, filed a brief, as *amicus curiae,* urging affirmance.

*Chester Inwald* filed a brief for the National Association of Tobacco Distributors, Inc., as *amicus curiae,* urging affirmance.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

This is a suit for an injunction, brought in a state court in Oklahoma by appellee, Oklahoma Retail Grocers Association, against appellant, Safeway Stores, for selling sev-

eral specified items of retail grocery merchandise below "cost" in violation of the Oklahoma Unfair Sales Act. Okla. Stat. tit. 15, §§ 598.1–598.11 (1951). Section 598.3 of the Act provides:

> "It is hereby declared that any advertising, offer to sell, or sale of any merchandise, either by retailers or wholesalers, at less than cost as defined in this Act with the intent and purpose of inducing the purchase of other merchandise or of unfairly diverting trade from a competitor or otherwise injuring a competitor, impair and prevent fair competition, injure public welfare, are unfair competition and contrary to public policy and the policy of this Act, where the result of such advertising, offer or sale is to tend to deceive any purchaser or prospective purchaser, or to substantially lessen competition, or to unreasonably restrain trade, or to tend to create a monopoly in any line of commerce."

The elements of "cost" are enumerated in other sections of the statute. Safeway defended on the ground, *inter alia*, that its reductions were permitted by § 598.7 of the Unfair Sales Act which allows "any retailer or wholesaler" to

> ". . . advertise, offer to sell, or sell merchandise at a price made in good faith to meet the price of a competitor who is selling the same article or products of comparable quality at cost to him as a wholesaler or retailer."

Safeway by cross-petition sought to enjoin several named members of appellee Association, including Speed, alleging that they were selling below cost in violation of the Act. The trial court, with some qualification, granted the injunction against Safeway and denied relief against appellees. On appeal, the Supreme Court of Oklahoma affirmed, 322 P. 2d 179, and since the constitutionality of

the state statute was challenged under the Fourteenth Amendment, we noted probable jurisdiction, 358 U. S. 807, and brought the case here under 28 U. S. C. § 1257 (2).

Safeway makes two main claims.

1. Safeway justified cutting prices below cost in some cities by claiming it was to meet the prices of some of its competitors who were also selling below cost. The statute allows a reduction below cost only when it is a good faith meeting of the competition of a seller who is selling at his own cost. The trial court found that Safeway's reductions violated the Act, and that Safeway could not avail itself of the statutory defense of meeting competition since its reductions were not in good faith but were made to meet prices Safeway "either knew or had reason to know were illegal . . . ." The court enjoined Safeway from

> ". . . selling, at retail, any items of merchandise . . . at prices which are less than cost to the retailer as defined in the Oklahoma 'Unfair Sales Act' and in violation of the provisions of said 'Unfair Sales Act', except to meet in good faith the prices of competitors who are selling the same articles or products of comparable quality at cost to them as retailers as defined in the Oklahoma 'Unfair Sales Act', and except in instances of other exempted sales as provided in Section 598.6 of said Oklahoma 'Unfair Sales Act.'"

The injunction, phrased substantially in the terms of the statute, allows Safeway to meet the prices of competitors who are selling "at cost to them" if the other requisites of the good faith defense are met. Appellant claims that this injunction deprives it of a constitutional right to compete since it forbids meeting the prices of competitors who are selling below cost. There is no constitutional

right to employ retaliation against action outlawed by a State. Safeway, the Oklahoma court held, had ample means, under the state statute, to enjoin the illegal methods of its competitors. It had no constitutional right to embark on the very kind of destructive price war the Act was designed to prevent.

Appellant also claims that there are situations in which a competitor might reduce his prices below cost without violating the Act, and hence, under the injunction, Safeway would have no remedy whatsoever since it could not retaliate in kind and judicial relief would not be available. The conclusive answer to this claim is that it is not before us for adjudication. The court below found that Safeway was meeting prices it "knew or had reason to know" were illegal. It then phrased its injunction in the terms of a statute which has yet to be construed in the abstract circumstances presented by appellant. The Oklahoma Supreme Court carefully noted that it was interpreting the Unfair Sales Act as applied to the particular facts of this case, pointing out that "until a proper factual case is presented which requires a clear determination and offers a practical situation in which all the conflicting problems and considerations of the area involved are apparent, this court will refrain from theorizing." 322 P. 2d, at 181. If this is a rule of wise restraint for the courts of Oklahoma in this situation, it clearly bars constitutional adjudication here.[1]

---

[1] The Oklahoma Supreme Court said:

"In this connection our attention has been called to the recent case (10–4–57) of State by Clark v. Wolkoff, Minn., 85 N. W. 2d 401, 403, wherein it was held that '(I)f a merchant in good faith sets the price of an article on the basis of a competitor's price, which price he in good faith believes to be a *legal price*, there is no violation,' which clearly is not the case herein. In the instant case, Safeway obviously and admittedly did not, in good faith, set the price of its articles which were subject to the Unfair Sales Act on the basis of its competitors' prices, which it in good faith believed to be legal prices

2. Appellant's second contention involves its competitors' use of trading stamps. Trading stamps, it hardly needs to be stated, are, generally speaking, coupons given by dealers to retail purchasers on the basis of the dollar value of the items purchased, e. g., one stamp for each ten cents' worth of goods, and are collected by the purchaser until he has enough to redeem for various items of merchandise. Trading stamps have had a checkered career in the United States, but since World War II their popularity has grown until now it is a reasonable estimate that these multi-colored scraps of paper may be found in almost half of America's homes.[2]

When this suit was brought Safeway did not use trading stamps. In the Oklahoma City-Midwest City area several of its competitors did. These stamps were deemed to be worth approximately 2.5 percent of the price of the goods with which they were given. Safeway contended in the Oklahoma courts that giving a trading stamp with goods sold at or near the statutory minimum resulted in an unlawful reduction below "cost" to the extent of the value of the trading stamp. To be specific, if an item sold for $1, and that price was statutory cost, the trading stamps given with it would be worth approximately 2.5

---

under the Unfair Sales Act, but on the contrary it set illegal prices for the sole purpose of meeting prices of its competitors, which it thought to be illegal." 322 P. 2d, at 181.

[2] The latest chapter in trading stamp history was recounted in The [London] Economist for May 30, 1959, at p. 850:

"In Colorado a proposal to tax the stamps brought battalions of housewives to the state capital. One of its original sponsors changed his mind when his own mother threatened to campaign against his re-election if he did not alter his stand. The newest twist to the trading stamp story is that they can now be exchanged, in the East, for a theatre seat, even, after July 12th; for one for 'My Fair Lady.' This will take, however, the stamps accumulated on nearly $700 worth of purchases—about what it costs to feed a family for five months."

cents and the net price was therefore $.975, or 2.5 cents below cost. Safeway sought to restrain its competitors from selling below cost in this manner and also claimed that it was justified, in order to meet competition, in reducing its prices to the net of its competitors' prices, taking into account the value of trading stamps. The Oklahoma court found that the giving of trading stamps with items sold at or near statutory cost was not a violation of the statute and denied Safeway's request for an injunction. The court also decided that Safeway could not reduce its prices to meet the trading stamp competition. It did, however, provide that Safeway could do what appellees did, it might issue "trading stamps, cash register receipts, or other evidence of credit issued as a discount for prompt payment of cash . . . ," as long as the value of the discount did not exceed three percent.[3]

Safeway contends that such a construction of the Unfair Sales Act violates the Fourteenth Amendment. Appellant claims that even though the State may prohibit sales below "cost," it is barred from allowing a merchant to give trading stamps with goods sold at or near "cost," unless it allows competing merchants to make an equivalent price reduction. For the State to differentiate between the use of trading stamps and price-cutting is, so the argument runs, a constitutionally inadmissible discrimination.[4]

> "It would be an idle parade of familiar learning to review the multitudinous cases in which the constitutional assurance of the equal protection of the

[3] Safeway, in fact, did offer its own cash discount coupons during the course of this litigation.

[4] This Court in other contexts has upheld, against a challenge based on the Fourteenth Amendment, state tax laws which discriminated against the use of trading stamps. *Rast* v. *Van Deman & Lewis Co.*, 240 U. S. 342; *Tanner* v. *Little*, 240 U. S. 369; *Pitney* v. *Washington*, 240 U. S. 387.

laws has been applied. The generalities on this subject are not in dispute; their application turns peculiarly on the particular circumstances of a case." *Goesaert* v. *Cleary*, 335 U. S. 464, 467.

The Oklahoma court decided that, although price cuts below cost were prohibited by the statute, the use of trading stamps was not a price reduction but constituted a cash discount, *i. e.*, a reduction given to customers for prompt payment of cash. Opposing expert accountants sustained and rejected the validity of such a difference. In matters of this sort we might content ourselves in resting on the clash of expert opinion to show that the Oklahoma decision was not wanting in a foundation that may not unjustifiably have commended itself as a state policy. However, we may note some readily apparent differences between the practices which support the State's differentiation and thereby the power asserted by the State.

Trading stamps are given to cash customers "across the board," namely, the number of stamps varies directly with the total cost of goods purchased. Safeway's price-cutting, however, was selective. This difference is vital in the context of this Act. One of the chief aims of state laws prohibiting sales below cost was to put an end to "loss-leader" selling. The selling of selected goods at a loss in order to lure customers into the store is deemed not only a destructive means of competition; it also plays on the gullibility of customers by leading them to expect what generally is not true, namely, that a store which offers such an amazing bargain is full of other such bargains.[5] Clearly there is a reasonable basis for a conclusion that selective price cuts tend to perpetuate this abuse whereas the use of trading stamps does not.

[5] See the article by Mr. Brandeis, as he then was, in the November 15, 1913, issue of Harper's Weekly, at p. 10.

This difference alone would be enough to require affirmance. It is reinforced by other tenable grounds for distinction. There was a basis in evidence for the view that the use of trading stamps has an entirely different impact on the consuming market than do price cuts. When prices are the same customers tend to go to the store offering trading stamps. But when prices are cut to the extent of the value of the trading stamp the stamps lose their lure and lower prices prove a more potent attraction. On the basis of this not unreasonable belief as to the economics of the highly competitive, low-profit-margin retail-grocery business, Oklahoma could well have concluded that its choice was to provide that all use a cash discount system or none could do so.[6] Such a view of the economic aspects of the problem affords an ample basis for the legislative judgment enforced by the court below.

Certainly this Court will not interpose its own economic views or guesses when the State has made its choice.

> "The Fourteenth Amendment enjoins the 'equal protection of the laws,' and laws are not abstract propositions. They do not relate to abstract units A, B, and C, but are expressions of policy arising out of specific difficulties, addressed to the attainment of specific ends by the use of specific remedies. The Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner* v. *Texas,* 310 U. S. 141, 147.

---

[6] This would come about if the dealer using trading stamps were allowed to meet the lowered price, or if, by being required to drop trading stamps, the other dealer were forced to raise prices. It is conceivable that a mathematical formula might be developed to equalize the use of trading stamps and price cuts. But certainly the Constitution does not place such a complex and, at best, uncertain and speculative burden on the States.

We are not concerned with the soundness of the distinctions drawn. It is enough that it is open to Oklahoma to believe them to be valid as the basis of a policy for its people.[7]

*Affirmed.*

MR. JUSTICE CLARK took no part in the consideration or decision of this case.

---

[7] Appellant also claims that the Oklahoma law is pre-empted by federal antitrust laws. However, this claim was not made below.