345 F.2d 465
 Mary A. SCHWARTZ, as Executrix under the Last Will and Testament of Samuel H. Schwartz, deceased, Libelant-Appellant,
v.
S.S. NASSAU, her engines, etc. and Incres Steamship Company, Ltd., Respondent-Appellee.
 No. 355.
 Docket 28731.
 United States Court of Appeals Second Circuit.
 Argued March 5, 1965.
 Decided May 7, 1965.
 Rehearing Denied June 7, 1965.
 
 Herbert Lebovici, New York City, Lebovici & Safir, New York City (Harold D. Safir, New York City, of counsel), for appellant.
 Ralph C. Kreimer, New York City (Kirlin, Campbell & Keating, Daniel J. Dougherty, New York City, of counsel), for appellee.
 Before MOORE, KAUFMAN and HAYS, Circuit Judges.
 HAYS, Circuit Judge:
 
 
 1
 The only issue presented by this appeal is whether a clause in the contract of passage between passenger and shipowner requiring that an action for wrongful death be "commenced and process served * * * within one (1) year from the date when the death * * occurred" is invalid under Section 4283A of the Revised Statutes which makes unlawful maritime contract provisions which provide for "a shorter period * * * for the institution of suits on * * * claims [for loss of life or bodily injury] than one year" from the date of injury, or in the case of death, from the appointment of decedent's legal representative.[1] The libelant argues that Article 13 of the contract quoted above provides a period of limitations for "institution" of suit shorter than one year (1) because of the inclusion of the words "and process served" and (2) because the time is to run from the date of death rather than from the date of appointment of decedent's legal representative. This second claim was not raised in the district court and cannot be raised for the first time here. Safeway Stores, Inc. v. Oklahoma Retail Grocers Ass'n, 360 U.S. 334, 342, 79 S.Ct. 1196, 3 L.Ed.2d 1280 n. 7 (1959); Scott v. Central Commercial Co., 272 F.2d 781 (2d Cir. 1959), cert. denied, 363 U.S. 806, 80 S.Ct. 1241, 4 L. Ed.2d 1149 (1960); Patent & Licensing Corp. v. Olsen, 188 F.2d 522, 525 (2d Cir. 1951); Wiper v. Great Lakes Eng'r Works, 340 F.2d 727, 731 (6th Cir. 1965).
 
 
 2
 As to the first claim libelant asserts that since suit is commenced in the federal admiralty courts by the mere filing of a libel, Admiralty Rule 1, the contractual requirement that suit be commenced "and process served" within one year has the effect of shortening the limitation period to less than the one year permitted by statute. The district court rejected this argument, denied libelant's motion to strike respondent's defense based on the contractual period of limitation, and granted respondent's cross-motion for summary judgment dismissing the libel. 223 F.Supp. 374 (1963). We affirm.
 
 
 3
 The facts of the case are undisputed. Libelant Mary A. Schwartz is the widow and executrix of Dr. Samuel H. Schwartz. She and her husband purchased a first-class passage for a cruise aboard respondent's S.S. Nassau from New York to Bermuda and return. On the face of the ticket reference was made to "the contract terms and conditions * * * set forth on this page and the over-page, to which passenger expressly agrees and which are to apply and govern the relations whatever they may be between passenger and the carrier * * *" Article 13, printed on the back of the ticket, reads in pertinent part as follows:
 
 
 4
 "Suit to recover on any claim shall not be maintainable unless commenced and process served as follows:
 
 
 5
 (1) Within one (1) year from the date when the death or injury occurred in respect of any claim for loss of life or bodily injury in any case where said Section 4283A [of the Revised Statutes] shall apply * *"
 
 Article 15 of the contract states that:
 
 6
 "The terms of this passage contract shall be separable and the illegality or invalidity of any article, paragraph, clause, or provision of this passage contract, in whole or in part, shall not affect or invalidate any other article, paragraph, clause or provision thereof."
 
 
 7
 While on board the vessel Dr. Schwartz became ill. The ship's physician was consulted and that same day Dr. Schwartz was removed by helicopter to a hospital in North Carolina, where he died about 2:00 A.M., the following day, May 8, 1960.
 
 
 8
 Mrs. Schwartz was appointed executrix under Dr. Schwartz's will on May 20, 1960. She originally brought suit against respondent for wrongful death in a New York court by service of summons on August 8, 1961, more than fourteen months after her appointment as executrix, and fifteen months from the date of Dr. Schwartz's death.
 
 
 9
 She filed a libel against respondent in the United States District Court on May 3, 1962, five days less than two years from her husband's death
 
 
 10
 Section 4283A applies generally to all personal injury and wrongful death cases in which "the manager, agent, master, or owner of any sea-going vessel * * * transporting passengers or merchandise or property from or between ports of the United States and foreign ports" has provided "by rule, contract, regulation, or otherwise" a time period within which a claimant must give notice or bring suit. The statute is one "of general import, enacted for the purpose of regulating the relationship between a common carrier * * * and passengers with reference to duties, obligations and restrictions of the carrier in connection with its issuance of tickets and its liability to passengers for safe passage thereunder," Moore v. American Scantic Line, Inc., 30 F.Supp. 843, 845 (S.D.N.Y.1939), aff'd, 121 F.2d 767 (2d Cir. 1941); accord, Scheibel v. Agwilines, Inc., 156 F.2d 636, 638 (2d Cir. 1946), and is applicable in state as well as federal courts, see Ayoub v. Moore-McCormack Lines, Inc., 17 Misc.2d 519, 191 N.Y.S.2d 411 (App.T.1958); Glusman v. United States Lines Co., 39 Misc. 2d 845, 241 N.Y.S.2d 960 (Sup.Ct.1963).
 
 
 11
 The purpose of the statute of which Section 4283A is a part, "was to encourage shipbuilding and [its provisions] * * * should be liberally construed in the ship-owner's favor." Section 4283A "is not * * * an isolated enactment whose negative language should be narrowly construed, but is a declaration of Congressional policy as to lawful contractual time limitations * * *." Scheibel v. Agwilines, Inc., supra, 156 F.2d at 638.
 
 
 12
 Appellant's argument rests on the premise that the statute is to be interpreted in the light of the federal rules for tolling a statutory period of limitations. Admiralty Rule 1; see Bomar v. Keyes, 162 F.2d 136 (2d Cir.), cert. denied, 332 U.S. 825, 68 S.Ct. 166, 92 L.Ed. 400 (1947). But see Sauerzopf v. North Am. Cement Corp., 301 N.Y. 158, 93 N.E.2d 617 (1950) (applying state statute of limitations rule in tolling a federal statute). It follows, says the plaintiff, that a contract that requires more than the federal admiralty rules require, i. e., that process also be served within a year, is invalid. However, under New York procedure an action is commenced for the purpose of tolling the statute of limitations, not as under the federal rule by the filing of a complaint, but by the service of process. New York Civil Practice Act § 218, now Civil Practice Law and Rules §§ 203(b), 304.
 
 
 13
 The problem of accommodating variant forms of federal and state procedure to federal substantive law is fraught with difficulty when a case arises in which a litigant may find himself time-barred by application of state procedural rules but not time-barred if federal procedural rules are applied. See Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 94 L.Ed. 513 (1949); Sauerzopf v. North Am. Cement Corp., supra; Irons v. Michigan-Atl. Corp., 279 App.Div. 32, 35, 108 N.Y.S.2d 824, 827 (4th Dep't 1957).[2] The draftsman of a contractual clause providing for limitation periods, such as the clause in question here, will find it difficult to devise a provision which will meet the requirements of a statutory rule regulating such clauses and which will, at the same time, be fully operative in state, federal and foreign courts.
 
 
 14
 Doubtless these drafting difficulties led to the inclusion of the separability provision of Article 15. Under that provision the reference to service of process in Article 13 is severable. Thus the defense of limitation is based on libelant's failure to comply with other clearly legal provisions of the contract without regard to the severable, supposedly illegal, provision.
 
 
 15
 Moreover the express reference in Article 13 of the contract to Section 4283A cannot be disregarded. The conditions, exceptions and provisos of the statute are to be read into the contract. Thus the phrase "and process served" is to be construed in the light of the incorporation of the statute by reference. The phrase would then read "and process served where suit must be instituted by service of process."
 
 
 16
 It does not follow from our holding the contractual limitation provision valid and enforceable in the present case that the provision would be enforceable in every conceivable fact situation. Our brother Kaufman, when a district judge, suggested in Barrette v. Home Lines, Inc., 168 F.Supp. 141, 143 (S.D.N.Y. 1958), that "a litigant believing the provisions of commencement and service to be so interwoven as to require both conditions to be met within one year may be forced to abandon rights which he has in the belief that while he could commence his action within one year he could not both commence and serve within that period." No such situation is presented by the case we are now considering. Libelant here has no excuse, based either on the literal language of the provision or on any equity arising out of reliance on it, for the delay in instituting suit. It would be extremely technical to hold that she can take advantage of an abstract "illegality" of the limitation clause.
 
 
 17
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 49 Stat. 960 (1935), 46 U.S.C. § 183b (1958):
 "Sec. 4283A. Stipulations limiting time for filing claims and commencing suit. —
 "(a) It shall be unlawful for the manager, agent, master, or owner of any sea-going vessel (other than tugs, barges, fishing vessels and their tenders) transporting passengers or merchandise or property from or between ports of the United States and foreign ports to provide by rule, contract, regulation, or otherwise a shorter period for giving notice of, or filing claims for loss of life or bodily injury, than six months, and for the institution of suits on such claims, than one year, such period for institution of suits to be computed from the day when the death or injury occurred."
 * * * * * * *
 "(c) * * * [I]f the action is one for wrongful death, any lawful limitation of time prescribed in such contract shall not be applicable so long as no legal representative has been appointed for such * * * decedent's estate, but shall be applicable from the date of the appointment of such legal representative * * *."
 
 
 [2]
 An analogous situation was presented to the Supreme Court in its second opinion in Herb v. Pitcairn, 325 U.S. 77, 65 S.Ct. 954, 89 L.Ed. 1483 (1945). There an injured workman had brought suit under the Federal Employers' Liability Act in an inferior state court that, as it appeared, did not have jurisdiction. The issue presented to the Court was whether the plaintiff had "commenced" the action within the meaning of Section 6 of the Federal Employers' Liability Act so as to toll the statute of limitations. The Court stated that:
 "An action is `commenced' for these purposes as a matter of federal law when instituted by service of process issued out of a state court, even if one which itself is unable to proceed to judgment, if the state law or practice directs or permits the transfer through change of venue or otherwise to a court which does have jurisdiction to hear, try, and otherwise determine that cause. * * * Clearly, * * * when process has been adequate to bring in the parties and to start the case on a course of judicial handling which may lead to final judgment without issuance of new initial process, it is enough to commence the action within the federal statute." Id. at 78-79, 65 S.Ct. at 955. See Burnett v. New York Cent. R. R., 380 U.S. 424, 426, 431, 433-434, 85 S.Ct. 1050, 1053-1054, 1056, 1057, 13 L.Ed.2d 941 (1965).
 KAUFMAN, Circuit Judge (dissenting):
 In this case Mrs. Schwartz, a widow, is deprived of her day in court by a holding that, at one and the same time, language in a contract of adhesion — drafted by the steamship company and accepted by the passenger on a take-it-or-leave-it basis — should sometimes be deleted, should sometime be augmented, and at other times is void under federal law. Believing that such a holding is inconsistent with basic notions of contract interpretation and fundamental fairness, I respectfully dissent.
 At the outset, it is helpful to set out the essence of the contract clause and statute we must interpret. Article 13 of the contract sought to require any action for the wrongful death of Mr. Schwartz to be "commenced and process served * * within one (1) year from the date when the death * * * occurred." The question is whether that requirement is proscribed by Section 4283A of the Revised Statutes, 46 U.S.C. § 183b, which makes unlawful maritime contract clauses providing for "a shorter period * * * for the institution of suits on * * * claims [for loss of life or bodily injury] than one year" from the date of injury, or in the case of death, from the appointment of decedent's legal representative.
 There can be no doubt that Article 13, as written, provides for a shorter period than one year in which to institute suit. Suppose, for example, that the contract provided that any action for wrongful death be commenced and pretrial discovery completed within one year from the date of death. Such a clause manifestly would be invalid because in order to comply with the dual requirements before the 365th day it would be necessary to institute an action in less than a year. Similar reasoning leads to rejection of Article 13, which seeks to require both commencement of the action and service of process within a year. The contractual clause is invalid because in most instances a suit will have to be instituted in less than a year in order to give the plaintiff time to complete service of process within the 365-day period.
 I do not believe, as the majority suggests, that the "or process served" phrase can be excused by "drafting difficulties" that arise because an action is deemed instituted, for limitations purposes, at different times in different situations. The opinion of my brothers in the majority is hinged on the argument that in the New York state courts an action is commenced by the service of process; in the federal courts an action based upon federal question or admiralty jurisdiction is commenced when the complaint or libel is filed; and in a federal court diversity suit, where the applicable limitation provision is geared to service of process, the mere commencment of the action by filing a complaint does not toll the time period. But a draftsman who wanted to take account of these variations would not have to insert the "and process served" language [if he was really trying to avoid the proscriptions of Sect. 4283A] and one who did would, as the District Court aptly recognized, be inartistic.
 It is reasonable to assume that a Congress, enacting legislation to outlaw any contractual provisions which would in any way curtail the period for the "institution of suits" to less than a year, was well aware that an action in some state courts is commenced by the service of process and that a federal admiralty suit is begun by filing a libel. Congress, by using the term of art "institution" of a suit, automatically incorporated the state rules making service of process a prerequisite to the tolling of a state limitations period where that is required. Similarly, in a diversity action the one-year minimum period for "instituting" a suit would include, where applicable, the requirement that process be served in order to toll the governing limitations period. Therefore, the phrase "and process served" is sheer surplusage in these two instances. But, on the other hand, in a federal admiralty action, such as the one before us, the suit would be "instituted" and the limitations period tolled once the libel was filed. Article 13 of the contract, by seeking to impose the additional burden of service of process in this admiralty action, flies in the face of the federal policy articulated in Section 4283A.
 Nor do I believe that the severability provision of Article 15 can be invoked to excise the "and process served" language in order to resuscitate Article 13. This case is readily distinguishable from Foster v. Cunard White Star, Ltd., 121 F.2d 12 (2 Cir. 1941), where two separate provisions in a contract, one governing notice and the other institution of suit, were held severable. Here, the restrictions on the institution of suit and service of process are an interwoven condition in one clause too closely related to be severed. See Barrette v. Home Lines, Inc., 168 F.Supp. 141 (S.D.N.Y.1958). To sever some of the words used in describing a unitary time concept amounts, in practical effect, to a redefinition of the time period. In other words, if it were valid to "save" illegality by a mere excision of an invalid phrase or word, then it would follow, for example, that a contract providing for commencement of suit in "one year less ten days" could be resurrected in litigation by a savings clause similar to Article 15.
 Obviously, the purpose in enacting Section 4283A is important in judging whether a contract clause meets the requirements fixed by Congress. I cannot agree with my brothers that because the section is an integral part of a comprehensive body of regulations declaratory of a federal policy to encourage shipbuilding, all contractual provisions referring to the section should be liberally construed in the shipowner's favor. The case cited for this proposition, Scheibel v. Agwilines, Inc., 156 F.2d 636 (2 Cir. 1946), is not really determinative because it simply held that a contract limitation clause valid under 4283A is, because of considerations of uniformity, controlling despite state legislation which seeks to prescribe a longer period. Indeed, when the scope of 4283A was first considered, a shipowner's contention that the section was narrowly confined to limitation-of-liability proceedings was definitively rejected. Moore v. American Scantic Line, Inc., 30 F.Supp. 843 (S.D. N.Y.1939), aff'd, 121 F.2d 767 (2 Cir. 1941). In reaching that conclusion the court noted that the statute was designed "`to remedy abuses which had arisen through the efforts of shipowners engaged in common carriage to limit unreasonably their obligations as carriers of' * * * `living' cargoes." 30 F. Supp. at 845.
 I agree that statutory provisions protecting shipowners against losses due to fire not caused by their neglect, 46 U.S.C. § 182, and setting limits to the extent of their liability, 46 U.S.C. § 183, were designed to help the maritime industry and should be so construed. But surely the statute of limitations provision, permitting the carrier to require the institution of suits for death or bodily injury within one year, was not designed to subsidize the shipping industry. Rather, Section 4283A sought to eradicate the evil of shipowners dictating unreasonably restrictive terms to passengers who, as a practical matter, lack any real power to negotiate. It was, in fact, intended by Congress to prevent shipowners from imposing unreasonably short periods of limitation on actions for personal injuries or death. The statute, as I view it, sets out what Congress deemed to be the shortest reasonable period of limitation — an absolute standard, any breach of which is invalid. See Moore v. American Scantic Line, Inc., supra. This interpretation is supported by Section 4283B, enacted less than a year after 4283A, which expressly declares any contract purporting "to lessen, weaken, or avoid the right" of any claimant to a trial of a claim for loss of life or bodily injury to be against public policy and void.
 As between the shipowner — however financially oppressed he may have been during the great depression when 4283A was enacted — and the passenger, any rule of construction that favors the shipowner ignores not only Congressional intention but practical realities as well. The maxim that a fixed, printed-form contract is to be construed most strongly against the drafter, 4 Williston, Contracts § 621 (3d ed. 1961); 3 Corbin, Contracts § 559 (1960); Restatement of Contracts, § 236(d), is particularly applicable in a case such as this where the "adhesion" agreement[1] is presented on a take-it-or-leave-it basis to one in a disadvantageous bargaining position. Here we do not have a legal transaction resulting from the give-and-take of those on an equal bargaining plane. Rather, "the weaker party's contractual intention is but a subjection more or less voluntary to terms dictated by the stronger party, terms whose consequences are often understood only in a vague way, if at all." Kessler, Contracts of Adhesion — Some Thoughts About Freedom of Contract, 43 Colum.L.Rev. 629, 632 (1943). As Judge Frank recognized, in a contract of adhesion
 "with one-sided control of its terms, when the one party has no real bargaining power, the usual contract rules, based on the idea of `freedom of contract,' cannot be applied rationally. For such a contract is `sold not bought.' The one party dictates its provisions; the other has no more choice in fixing those terms than he has about the weather." Siegelman v. Cunard White Star Ltd., 221 F.2d 189, 204 (2 Cir. 1955) (dissenting opinion).
 At the same time, I believe it is really begging the question to urge that because the draftsman specifically referred to Section 4283A, Article 13 should be construed to go only as far as the statute permits. Who is not aware that the typical passenger (including judges) reads the fine-print terms of such contracts superficially, if at all. In any event, the voyager should not be put to the task of reconciling the contract language with the statute or running to the nearest law library to read the statute and the cases interpreting it.
 Finally, some comment is in order concerning my brothers' concession that Article 13 may not be enforceable in every conceivable fact situation. I assume, by their vote to affirm, that they agree with the District Court that if this action had been instituted within one year, but the marshal had not affected service until after the expiration of the year, the defense of the limitation clause would fall. See 223 F.Supp. 374, 376 (S.D.N.Y.1963). And from their allusion to the relevance of equities based on reliance and their quotation from my opinion in Barrette v. Home Lines, Inc., supra, I gather that the contract clause would not defeat one who failed to institute suit because he thought he could not serve process within the limitation year. With all respect, I do not believe that this functional approach is proper in interpreting contractual language which, at least theoretically, is written to govern the parties' actions. The validity of the clause must be judged as of the time it was entered into and not on the basis of subsequent conduct or events occurring long after the contract was signed, sealed and delivered. If, as my brothers apparently concede, Article 13 would have limited Mrs. Schwartz's freedom of action in certain conceivable fact situations, then she was entitled, by virtue of Section 4283A, to regard the provision as invalid. But a pragmatic test, opening the door to vague and uncertain inquiries about reliance, forces the courts into an area in which precisely such inquiries are to be avoided by looking to the specific language of the contract alone.
 If Incres wanted to take advantage of the one-year rule of Section 4283A, its draftsman should have done no more than the statute permits. But having done more, whether through inartistry or imposition, the carrier should be remitted to the normally operative two-year statute of limitations of the Death on the High Seas Act, 46 U.S.C. § 763, with which Mrs. Schwartz clearly complied.
 In any event, even were I to accept my brothers' notion that the illegality of Article 13 should not be determined in the "abstract," I believe they are in error in affirming the lower court for its ruling was on a motion for summary judgment and, at the very minimum, the question of reliance vel non presented triable issues of fact. Indeed, the affidavits presented to the District Court did not discuss the reliance issue, although it appears that Mrs. Schwartz did move with dispatch and retained an attorney prior to the expiration of the one-year period, who in fact sent a claim letter to the carrier before that period had expired. It seems harsh to deprive the libelant in this summary fashion of at least an opportunity to show that, even on the majority's approach, Article 13 did not foreclose her right to seek recovery for the wrongful death of her husband.
 Notes:
 
 
 [1]
 Raymond Saleilles, a French legal authority, coined the phrase "contrats d'adhésion," using it to describe contracts "in which one predominant unilateral will dictates its law to an undetermined multiple [e. g., all passengers using Incres vessels] rather than to an individual * * *, as in all contracts which, as the Romans said, resemble much more a law than a meeting of minds." Saleilles, De la Déclaration de volunté 229 (1901).