Cologara MAHONEY, on behalf of herself and her minor child Melissa, et al., Plaintiffs-Appellants-Cross Appellees,

v.

Philip TOIA, Individually and as Commissioner of the Department of Social Services of the State of New York, Defendant-Appellee-Cross Appellant,

and

Lewis Frankfort, Individually and as Commissioner of the Agency for Child Development of the City of New York, and J. Henry Smith, Individually and as Commissioner of the Human Resources Administration of the City of New York, Defendants-Appellees.

Nos. 446, 555, Dockets 77–7478, 77–7479.

United States Court of Appeals, Second Circuit.

Argued Jan. 25, 1978.

Decided March 6, 1978.

Irving R. Kaufman, Chief Judge, dissented and filed opinion.

Ira S. Bezoza, Brooklyn Legal Services Corp. A, Brooklyn, N. Y. (Cynthia Mann and Elizabeth A. Hay, Brooklyn, N. Y., on the brief), for plaintiffs-appellants-cross appellees.

Mark C. Rutzick, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen. of State of N. Y., Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, on the brief), for defendant-appellee-cross appellant.

Before KAUFMAN, Chief Judge, and LUMBARD and MULLIGAN, Circuit Judges.

LUMBARD, Circuit Judge:

This appeal by Cologara Mahoney, representing herself, her infant daughter and all other persons who are eligible for day care services while "seeking employment" pursuant to the New York State Code of Regulations, 18 N.Y.C.R.R. § 394.2(a)(3), raises the question whether timely notice and a hearing are necessary under federal regulations before certain publicly provided day care services may be terminated. The appellees and cross-appellants, Commissioners of the New York State Department of Social Services and the New York City Human Resources Administration and Agency for Child Development, question whether they are required to offer reinstatement of services following a termination and a request for a hearing. We find that while appellees are not required to provide recipients with timely notice or to continue services uninterrupted pending a decision after a hearing, the federal regulations do provide for reinstatement of services where a recipient requests a hearing within ten days of notice of termination and raises issues not involving solely the application of state or federal law or policy.[1] Accordingly, we affirm the order of the district court.

Mahoney and four other named plaintiffs brought this class action in the Southern District of New York in May 1976 charging that the New York State Department of Social Services day care eligibility regulation which terminates public day care services to a recipient after 120 days of seeking employment violates the federal fair hearing regulations and constitutional due process which require adequate notice of the proposed termination of services and the continuation of benefits pending a hearing decision. Only the statutory claim is before us on this appeal.[2]

The State Department of Social Services and the Agency for Child Development (ACD) provide publicly funded day care services in New York City. Seventy-five percent of the cost of these services is funded by the federal government under Title

---

1. 45 C.F.R. § 205.10a(7) provides:

   A State may provide that a hearing request made after the date of action (but during a period not in excess of 10 days following such date) shall result in reinstatement of assistance to be continued until the hearing decision, unless at the hearing it is determined that the sole issue is one of State or Federal law or policy. In any case where action was taken without timely notice, if the recipient requests a hearing within 10 days of the mailing of the notice of the action, and the agency determines that the action resulted from other than the application of State or Federal law or policy or a change in State or Federal law, assistance shall be reinstated and continued until a decision is rendered after the hearing.

2. Appellant had also urged in the district court that the 120 day "seeking employment" rule violated the purposes and publication requirements of Title XX of the Social Security Act, 42 U.S.C. § 1397 et seq. (1970) and the regulations promulgated thereunder. Similarly, these claims are not presently before us.

XX of the Social Security Act, 42 U.S.C. § 1397 *et seq.* As a condition for federal assistance, the state must establish eligibility requirements designed to promote enumerated federal goals. These goals include achieving or maintaining self-support and self-sufficiency, preventing neglect and reducing inappropriate institutional care. 42 U.S.C. § 1397. The New York State requirements are set forth in N.Y.C.R.R. § 394 and among them is the "seeking employment" criterion which provides that day care services are available where parent(s) or caretaker relatives are actively seeking employment. Initial authorization shall not exceed sixty consecutive days and subsequent authorization, not to exceed an additional sixty days, may be issued after a redetermination of eligibility and referral to a local district's employment service program. Day care services are to end after 120 days if no employment or other change in family circumstances has occurred.

When eligibility ends, a notice of intent to discontinue services is sent to the recipients of services advising them of their right to request an administrative hearing. Notice of the circumstances under which services may be continued pending a hearing is not provided.

Appellant questions whether the New York procedures comply with federal regulations promulgated by the United States Department of Health, Education and Welfare (HEW) in an effort to further efficient administration of the Social Security Act. See 42 U.S.C. § 1302 (1970). One such regulation, 45 C.F.R. § 205.10, made applicable to Title XX services by 45 C.F.R. § 228.14, requires both adequate and timely notice prior to termination of assistance in addition to continued assistance pending a determination where a hearing is requested. *Timely* means at least ten days prior to termination and *adequate* means a written notice including the action to be taken, the reason therefor, an explanation of the individual's right to request a hearing and the circumstances under which assistance is to be continued if a hearing is requested. 45

C.F.R. § 205.10(a)(4). Nine circumstances are set forth where only adequate notice is required, not later than the date of the action. In these situations, although assistance need not be continued pending a decision after a hearing, 45 C.F.R. § 205.10a(7) provides for reinstatement of services if a recipient requests a hearing within ten days after notice is mailed advising of termination. One of the nine circumstances is the situation where

"a special allowance granted for a specific period is terminated and the recipient has been informed in writing at the time of initiation that the allowance shall automatically terminate at the end of the specified period." 45 C.F.R. § 205.-10(a)(4)(ii)(I).

Appellant received notice in March 1976 that her day care services would be terminated. She requested and received a hearing but the determination of the ACD was upheld. Three of the plaintiffs who originally joined her in this action also received termination notices and requested hearings. Two were restored to day care services while the third had a change in personal circumstances which made further services unnecessary. Mahoney remains the sole named plaintiff-appellant herein.[3]

Mahoney's motion for partial summary judgment and defendants' cross-motion for summary judgment occasioned Judge Conner to issue three separate opinions. He initially found that New York's policy of terminating day care services prior to a hearing violated the federal regulations in that neither timely notice nor a pre-termination hearing were afforded. *Voelker v. Whaley,* 76 Civ. 2418 (February 2, 1977). He adhered to this position and denied a motion to reargue on May 24, 1977. *Voelker v. Frankfort.* However, following a motion for a stay, Judge Conner reconsidered these decisions and determined they were incorrect. *Voelker v. Frankfort* (June 30, 1977). He then concluded that New York's "seeking employment" eligibility requirement is a special allowance within the meaning of 45 C.F.R. § 205.10(a)(4)(ii)(I)

**3.** The fourth named plaintiff, Diane Voelker, was not made a party to this appeal.

and, accordingly, neither timely notice nor continued benefits are required pending a hearing. Although his opinion was silent on this point, his partial summary judgment of July 13, 1977 directed defendants to amend their termination notices to advise recipients that upon timely request for a hearing services would be reinstated and continued until a decision is rendered. It is this order from which the present appeals are taken.

▌ Cross-appellants have on this appeal belatedly challenged the validity of the federal regulations that require either a continuation or a reinstatement of services where a hearing is requested by a day care recipient who has received notice of termination. Since this argument was not raised in the district court, and, indeed, Judge Conner was then of the view that all parties agreed that the fair hearing requirements of 45 C.F.R. § 205.10(a) apply to social service programs, we need not reach that issue here. *See Safeway Stores v. Oklahoma Retail Grocers Association,* 360 U.S. 334, 79 S.Ct. 1196, 3 L.Ed.2d 1280 (1959). For purposes of this appeal, then, we assume that the federal regulations mean what they say—that the hearing requirements of 45 C.F.R. § 205.10 apply to Title XX services. 45 C.F.R. § 228.14. *See generally Schneider v. Whaley,* 541 F.2d 916 (2d Cir. 1976).

▌ What remains to be determined is whether the 120 day seeking employment criterion is a "special allowance," 45 C.F.R. § 205.10(a)(4)(ii)(I), requiring adequate but not timely notice. We find that in those narrowly circumscribed instances where the allowance is granted for a specific period and where the recipient is advised of this time limitation at the initiation of services, the special allowance exception applies. Its use should be limited to those situations—such as that of Mrs. Mahoney—where the possibility of error is virtually non-existent, *see Harrell v. Harder,* 369 F.Supp. 810, 822 (D.Conn.1974). Judge Conner carefully considered these limitations before concluding that they were met by the 120 day rule. He correctly observed that the 120 day rule runs for an outer limit of time beyond which services may not extend. Indeed, we note that it is the only eligibility requirement under the New York regulations which is time limited, formulated in an apparent attempt to balance the need for a "seeking employment" category with the limited funds available for day care services in general.

Judge Conner also found that sufficient written notice is provided to recipients who are advised, by virtue of the application form, that services are available under the "seeking employment" exception for "sixty days or less." Since this notice, "if, anything, overstates the imminence of [the loss of services]," *Voelker v. Frankfort,* 76 Civ. 2418 (June 30, 1977) at 6, it satisfies the requirement that written notice advise the recipients of the automatic termination. A recipient also receives oral notification of both the sixty day limitation as well as the possibility of renewal for a maximum of sixty more days.

Judge Conner finally concluded that opportunities for factual disputes are unlikely under the 120 day rule. There are two possible areas of dispute: (1) the calculation of time and (2) a determination of employment status, both of which "are susceptible of resolution by reference to the readily 'ascertain[able] circumstances of the particular case.'" *Voelker v. Frankfort, supra* at 7 (citation omitted.) Miscalculations of time are unlikely and, as appellant concedes, recipients of services are themselves obligated to advise the appropriate agency office of any change in employment status thereby protecting against possible errors. *See generally Lavine v. Milne,* 424 U.S. 577, 96 S.Ct. 1010, 47 L.Ed.2d 249 (1976).

▌ We thus conclude that the 120 day seeking employment criterion is a special exception within the meaning of 45 C.F.R. § 205.10(a)(4)(ii)(I). Accordingly, appellees need only provide reinstatement upon a timely request for a hearing where the issue raised is not one involving solely state or federal law. 45 C.F.R. § 205.10(a)(7). In so holding we observe that day care recipients should not suffer palpably from this

procedure. They have an obligation to advise the agency of eligibility under some criteria other than seeking employment. The ACD assures us that new information will be acted upon immediately "to provide additional care where called for."[4] Moreover, if services are interrupted they may be reinstated by simply requesting a hearing. To require any more than this of the State Department of Social Services would put an additional administrative burden upon that agency for which no pressing need has been shown.

We agree with Judge Conner that recipients must be notified at the time of termination of their right to request a hearing and the circumstances under which assistance is to be continued if a hearing is requested. Uninterrupted service, however, should not be required. Statistics provided by the parties indicate that as many as forty percent of those eligible under the 120 day rule cannot show eligibility for further services under a different standard. Report on the Study of "Seeking Employment" in New York City's Day Care Program. It would seem that the needless use of funds to continue day care services to those who are no longer eligible would result in obviously needy recipients obtaining no services because funds are not available.

Affirmed.

IRVING R. KAUFMAN, Chief Judge (dissenting):

I agree with that portion of the majority opinion which holds that, for the purposes of this appeal, we must assume the applicability of the hearing requirements of 45 C.F.R. § 205.10 to the provision of day care services under Title XX of the Social Security Act, 42 U.S.C. § 1397 *et seq.* But I cannot subscribe to its resolution of the narrow and knotty question whether the delivery of day care services under the 120 day "seeking employment" criterion constitutes a special allowance. The majority's view conflicts with the express purposes of Title XX, and ignores the structure of the day care plan promulgated by the New York State Department of Social Services.

In adopting Title XX, Congress sought to ensure that each state, with the financial assistance of the federal government, would furnish services "directed at the goal of (1) achieving or maintaining economic self-support to prevent, reduce, or eliminate dependency, (2) achieving or maintaining self-sufficiency, including reduction or prevention of dependency . . . ." 42 U.S.C. § 1397. Pursuant to this legislative mandate, New York State established a program for the delivery of day care services. The regulations effectuating the state scheme provide that day care services are "a necessary part of a plan of self-support," and require the parent or caretaker seeking such aid to demonstrate, *inter alia*, that he or she is employed, participating in an approved program of vocational training or rehabilitation, or actively seeking employment. Day care services are also granted as part of a plan to achieve or maintain self-sufficiency, in those instances when an adult, due to illness, incapacity or necessary absence from the home, is unable to care for or supervise a child. 18 N.Y.C.R.R. § 394.3. While the grounds for eligibility are closely intermeshed, a parent need only demonstrate the applicability of one of the "programmatic criteria" to justify its child's placement in a day care facility.

Of the many alternative bases for eligibility set forth in 18 N.Y.C.R.R. § 394, only "seeking employment" is temporally limited. Initial authorization is granted for a 60 day period, renewable for an additional 60 days upon a redetermination of eligibility by the local district's employment service program. Day care services terminate automatically at the end of 120 days if the recipient has not demonstrated that continuation is justified under another of the program's criteria. In almost 60% of the cases, another ground for eligibility is established.

Superimposed on this state system are federal regulations governing the nature and availability of hearings whereby indi-

---

4. Affidavit of Stephen Tame, Assistant to Lewis Frankfort, ¶ 12 (June 27, 1977).

viduals may contest a decision to terminate services. As the majority points out, 45 C.F.R. § 205.10 requires that the state provide adequate and timely notice, namely, notice ten days prior to the effective date of the agency's action. Section 205.10 also prescribes the continuation of assistance pending decision following a request for a fair hearing. Pre-termination notice must be given and can only be avoided under certain, limited, circumstances, including those instances where a "special allowance" is granted for a specific period . . . . and the recipient has been informed in writing at the time of initiation that the allowance shall automatically terminate at the end of the specific period." 45 C.F.R. § 205.10(a)(4)(ii)(I). Where an exception pertains, and adequate notice is sufficient, services are merely reinstated following the request for a fair hearing.

This regulatory scheme provides the context for the question whether the provision of day care services under the "seeking employment" eligibility criterion is a special allowance. It is, to be sure, facile and appealing to decide that such services are "special allowances" since 18 N.Y.C.R.R. § 394.3 does contain express temporal limitations. But to do so would exalt a form of words over substances. As Judge Conner pointed out in his earlier opinion of 24 May 1977, day care services under the 120 day rule are neither special—in that they are part of an on-going regular social service program—nor are they necessarily provided for a "specific period"—since the regulations merely establishes a maximum duration for the delivery of benefits.

It is patently clear that New York State has created an *integrated* system for the delivery of social services consistent with the enumerated federal goals of fostering self-sufficiency and self-support. The State's regulations further evidence a belief that the availability of uninterrupted day care services to assist individuals striving to become productive members of society is vital to those laudatory ends. The programmatic criteria of 18 N.Y.C.R.R. § 394.3 are, accordingly, closely interwoven, and a recognition of the character of their in-

terrelationship is necessary if the state scheme is to have any chance of success. Parents and caretakers, first made eligible for day care services while seeking a job or undergoing vocational training, are provided that service precisely in the hope that they will continue to require it when they have found gainful employment. There is evidence, moreover, that this intended movement from one eligibility criterion to another has, in large measure, been achieved. In a study dated July 9, 1976, the State Department of Social Services found that almost 60% of those receiving day care benefits while looking for work are subsequently found otherwise eligible for that service.

If day care services are erroneously discontinued for even a few days, a possibility raised by the characterization of it as a "special allowance," the entire state system is undermined and its federal purposes thwarted. The inability of a parent to find an alternative source of care for his or her child pending a request for a fair hearing may well mean the difference between retaining a long sought after job and losing that much needed employment.

The difference between a "true" special allowance, such as the additional sum provided during winter months for heating expenses, and the provision of day care services under the 120 day rule could not be clearer. In the case of a heating allowance for a specific term, the chances for agency error are, in fact, minimal. Its administration requires little more than a clerk who possesses a calendar and an elementary education in arithmetic. Moreover, the hardship attending agency error, while not insubstantial to the family who may have to suffer the cold for a day or two, is seldom irremediable. With regard to day care services, however, the actual running of the 120 day period is secondary to the factual determination whether the parent or caretaker's circumstances have changed to require continuation of services under another eligibility criteria. In such a situation, the possibility of error is not, as the majority suggests, "virtually non-existent." *Har-*

*rell v. Harder,* 369 F.Supp. 810, 822 (D.Conn.1974). In addition, unwarranted termination could cause great, perhaps irremediable hardship. Two or three months expended in the search for a job may be time spent in vain and, particularly given the present state of the economy, another two or three months may transpire before other employment is found. The mere fact that recipients are obligated to advise the appropriate agency office of any change in their status does not, as the majority suggests, insure against these costly mistakes. The flow of information within agencies is often less than flawless, and predicating agency infallibility upon the initiative of sometimes uninformed recipients is ill-advised at best.

The fallacy of the majority's determination is underscored by its practical effects. Since day care facilities must operate at 110% of capacity, a child from the extensive waiting list will immediately replace one removed from a center. If the parent or caretaker of the terminated child requests a fair hearing, the youngster will be reinstated pending decision, and one just assigned will be displaced. While the state's concern that as many children eligible for benefits receive them is commendable, the human waste of this "in-again, out-again" system cannot be considered insubstantial. And, though the state has discretion to manage its program as it sees fit, one wonders about the wisdom of allocating scarce resources to finance the administrative costs of this counterproductive procedure.

There is a dearth of decisional authority defining the parameters of the "special allowance" exception. In such a case, I believe it is incumbent upon us to consider the nature and purposes of the state and federal system for the delivery of social services. When viewed in this broad framework, it is clear that pre-termination hearings are necessary to preserve the integrity of that scheme. The result reached by the majority, ignoring the very purposes of Title XX, would instead exalt a single number, drawn from a regulation taken out of its natural context. I respectfully dissent.