Hugh H. Hogue and John R. Knott, Individually and
doing business as Hogue & Knott Super Market,
Appellees,

*v.*

The Kroger Company, Pic-Pac Operations, Inc., and
National Food Stores of La., Inc., Defendants-
Appellants.

373 S. W. 2d 714

(*Jackson,* April Term, 1963.)

Opinion filed December 5, 1963.

Petition for Rehearing Denied January 8, 1964.

366

A. LONGSTREET HEISKELL, FRIERSON M. GRAVES, JR., Memphis, of counsel, SHEPHERD, HEISKELL, WILLIAMS, WALL & KIRSCH, Memphis, for appelles.

JAMES W. MCDONNELL, JR., Memphis, of counsel, CANADA, RUSSELL & TURNER, Memphis, for Kroger Co.

TAYLOR & TAYLOR, Memphis, for Pic-Pac Operations, Inc.

CLARENCE CLIFTON, WALTER P. ARMSTRONG, JR., Memphis, for National Food Stores of La., Inc.

Mr. Justice White delivered the opinion of the Court.

This appeal is from a declaratory decree of the chancellor. He construed certain portions of the ''Tennessee Unfair Milk Sales Act'' (T.C.A. secs. 52-331 through 52-334), and declared them constitutional as applied to the facts in the instant case.

Appellants are retail grocers who give trading stamps with their merchandise, including milk. Appellee is a retail grocer who does not give trading stamps.

It was averred and admitted that appellants sell milk at their invoiced price, plus eight per cent of the invoiced price (this sum is called ''cost'' in the terms of the Act), and give trading stamps in addition.

Appellee sought a declaratory judgment of his right under T.C.A. sec. 52-334(7) to sell milk at the effective price at which appellant were selling their milk, i. e., their stated or posted price, less an amount equal to the cost of the trading stamps.

The Commissioner of Agriculture filed a cross-bill seeking an injunction against appellee's selling milk at a price determined in such manner. The cross-bill averred that appellee was selling milk below cost with intent to unlawfully divert trade from competitors in violation of the Act.

The chancellor denied the injunction and dismissed the cross-bill. The Commissioner prayed for and was allowed an appeal to this Court. After due consideration this Court affirmed the chancellor's decision and remanded the cause for further proceedings on the appellee's original bill.

Mr. Chief Justice Burnett, writing for the Court, stated that the question there was whether the chancellor had abused his discretion in denying the injunction on the basis of the record before him at that time. He pointed out that the chancellor was correct in ruling that the giving of trading stamps with milk priced at the statutory minimum (invoiced price plus eight per cent for cost of doing business), violated the Unfair Milk Sales Act, T.C.A. secs. 52-331 through 52-334. *Hogue v. Kroger Co.*, 210 Tenn. 1, 6, 356 S.W.2d 267 (1962).

He then noted that appellee's good faith in lowering his price could not be questioned since appellee's answer, which was before the chancellor, was a sworn answer and set out such good faith. Thus, on the record before the chancellor it appeared that the Commissioner was seeking an injunction against one retailer, who was lowering his price in good faith to meet a price of a competitor (this price had not, at that time, been declared illegal), while ignoring other violations including the competitors. On this basis we held that the chancellor had not abused his discretion.

On remand, the cause came to be heard on the original bill and the answer of Kroger, the answer of Pic-Pac Operations, Inc., the original, amended, and supplemental answer of National Food Stores of La., Inc., all

on the motion of appellee for a hearing on bill and answer.

The chancellor ruled in effect, that (1) appellee was entitled to a declaratory decree on the pleadings herein; (2) the Unfair Milk Sales Act was constitutional; (3) the giving of trading stamps with milk sold at the statutory minimum was a violation of said Act, when done with the requisite intent; and that the same was true of coupons and other concessions which had the same effect; (4) any merchant who gave trading stamps, etc., with his milk, had to raise the price above "cost" by the cost to him of the stamps, etc.; (5) a retailer who gave no such stamps, etc., could lower his price to meet the price of a competitor who gave them while selling at or below cost and that he could meet each further reduction in the same manner; (6) the declaratory decree was not intended to be for or against any party but was intended to construe the Act for all retailers operating under its provisions. Costs were adjudged against the complainant, appellee herein.

The appellants contend that by virtue of the fact that appellee has, at times, given redeemable coupons, etc., which are not distinguishable in principle from stamps, it comes into the Court of Equity with unclean hands in the very matter in question and, therefore, is not entitled to a declaratory judgment.

On the first reading, this seems to be a valid conclusion or statement of the law, but upon further reflection the contrary appears, i. e., that the clean hands rule does not necessarily apply in a declaratory judgment suit.

Section 51 of Gibson's Suits in Chancery sets out and explains the maxim of equity to which the appellants refer:

"* * * a complainant, who has been guilty of unconscientious conduct or bad faith, or has committed any wrong, in reference to a particular transaction, cannot have the aid of a Court of Equity in enforcing any alleged rights growing out of such transaction."

The appellee is not asking the chancellor to enforce any right growing out of any transaction nor is he seeking injunctive relief or, in fact, any "in personam" relief. Appellee asks only that the chancellor render a declaratory decree so construing the Unfair Milk Sales Act as to settle the controversy which exists between appellants and appellee.

■ The applicability of the "Clean Hands Doctrine" to a declaratory judgment suit seems to be a new question in this State. The principles, however, are set out in Sections 51 and 1173 through 1183, Gibson's Suits in Chancery. Under these principles and in light of the history of the "Clean Hands Doctrine" there seems to be no reason to apply it to a declaratory judgment suit and certainly there is no reason to apply it in the instant case.

■ There are three general requirements for a situation meriting a declaratory judgment: (1) a real question, as opposed to a theoretical question; (2) the person raising the question must have a real interest at stake; (3) and there must be one who has a real interest opposing the declaration. *Cummings v. Beeler*, 189 Tenn. 151, 223 S.W.2d 913 (1949), and the cases cited therein; Section 1179, Gibson's Suits in Chancery.

■ In the instant case there are clearly several real questions involved and parties with real interest on both sides, therefore, the chancellor was correct in holding that this was a proper case for declaratory relief. There exists a real need to settle the matters in controversy herein.

■ T.C.A. secs. 52-331 through 52-334, which is called the Unfair Milk Sales Act, was designed to prevent the destruction of the small dairy farmer, the small dairy plant, and the small retailer by financially strong competitors who are able to sell below their costs for extended periods of time. The Legislature thought this was a purpose affected with the public interest and quite properly within the State's police power.

The method adopted by the Legislature to attain this end was to prohibit retailers from selling milk below their cost. This "cost" was defined as the sum of their invoiced price, plus eight per cent of their invoiced price for cost of doing business (the eight per cent being the presumed cost of doing business in absence of proof to the contrary).

The Act is not for the purpose of guaranteeing to anyone a profit. It is not a price fixing statute. Under it, the retailer may set any price he chooses so long as it is above his "cost". Its purpose, as set out above, would be defeated if retailers could avoid its limitations directly or indirectly so as to sell at prices effectively below "cost".

■ We must construe the Act so as to give effect to the legislative purpose rather than to adopt a construction which fosters the very evils it was intended to prohibit.

The appellants contend that trading stamps should, for the purposes of the Act, be characterized as advertising, discounts for cash payment, or merchandising gimmicks. That, as such, they do not constitute a price reduction and, thus, it is not a violation of the Act when they are given with milk which has already been priced at the statutory minimum.

This question was well briefed by counsel for all parties. Because it was one of the two major questions of the case, the authorities have been considered at length.

Most of the numerous cases cited by appellants were concerned with the characterization of trading stamps as they affect the various fair trade laws. The competing considerations are not analogous when the law involved is an Unfair Sales Act.

The appellants rely heavily on *Safeway Stores v. Oklahoma Retail Grocers Association,* Okl., 322 P.2d 179 (1958), affirmed 360 U.S. 334, 79 S.Ct. 1196, 3 L.Ed.2d 1280. The Safeway case, which is in point, discusses the history of trading stamps and explores the various theories concerning their purpose and how they should be characterized. Included is a discussion on such concessions from an accounting standpoint.

The majority of the Oklahoma Supreme Court, in a five to four decision, held that the stamps should be characterized as a discount for cash payment rather than a price reduction. For that reason they concluded that a retailer who sells goods at a posted price, which is the statutory minimum, while giving trading stamps does not violate the state's Unfair Sales Act.

The minority reasoned that the stamps effectively reduced the price below the minimum no matter how they

were characterized. Since the Act did not authorize, discounts of any kind, which had the effect of reducing the price below the statutory minimum (i. e. "cost") a sale at the statutory minimum plus giving stamps violated the Act. We fully agree with the minority.

While the position of the majority in the Safeway case, which the appellants contend should control here, may be reconcilable with accounting theory and with one interpretation of our statute, we cannot reconcile it with certain obvious facts, of which we must take judicial notice.

Trading stamps cost the retailer money (approximately one-fourth cent each) and are, for most purposes, the equivalent of money in the hands of the consumer who gets them along with his milk. He can take them to the redemption center and exchange them for goods if not money. The same principle applies to coupons and other concessions.

The stamps have the effect of reducing the price whether called advertising gimmicks, discounts for cash payment, etc., or not. When the retailer sets his milk price at the statutory minimum—invoiced price plus the cost of doing business (eight per cent in absence of proof to the contrary), and gives customers trading stamps in addition to the milk, it has the clear effect of returning to the customer an amount of money equal to the cost of the trading stamps. This reduces the price below the statutory minimum and violates the Act. This reasoning is sound and does not permit argument in our opinion.

If we chose to ignore this fact and held that the giving of stamps with minimum prices did not violate the Act, it would mean that a retailer could avoid the limitations of the Act by indirect means and legally sell his milk at a

price which was effectively less than the statutory minimum. In such a case a competitor could, in good faith, lower his price to meet this effective price. Then the first retailer (the one giving stamps) could lower his posted price to meet the price of the competitor, etc. Thus, the Act would become ineffective.

For the reasons set out above, we hold that giving trading stamps, etc., along with milk violates the Act if the milk is already priced at the statutory minimum (invoiced price plus eight per cent cost of doing business).

The chancellor held that even though the retailer is violating the Act, when he gives stamps with milk priced at the statutory minimum, T.C.A. sec. 52-334(7) will allow a competitor, acting in good faith, to reduce his price to meet the illegal price of the first retailer.

Such a construction of T.C.A. sec. 52-334(7) would mean that one retailer could violate this public statute of our State with impunity because another retailer did it first.

It is not necessary to place this construction on this sub-section. We construe it to allow a retailer, acting in good faith, to reduce his milk price to meet any *lawful* price set by a competitor. A situation could occur where a retailer could prove that his cost of doing business was less than the eight per cent which the statute assumes and, thus, his price would be less than invoice plus eight per cent and still be *lawful*. In such a case a second retailer could reduce his price below the statutory minimum to meet this *lawful* price even though his cost of doing business was eight per cent or even higher.

■ Having taken this view, we must modify the decision below. We hold that a retailer is not authorized by T.C.A. sec. 52-334(7) to reduce the price of milk below the statutory minimum in order to meet the unlawful price of a competitor who is selling at a posted price which is the statutory minimum and giving stamps, etc., in violation of the Act.

Since our modification of the chancellor's degree eliminates the constitutional questions raised on this appeal, no useful purpose would be served in discussing them.

The assignments of error are overruled and the chancellor's decree is affirmed as herein modified.

The costs are adjudged against the appellee who sought the declaratory decree.

BURNETTE, CHIEF JUSTICE, and DYER and HOLMES, JUSTICES, and CLEMENT, SPECIAL JUSTICE, concur.

### Opinion on Petitions to Rehear

Counsel for appellants have filed petitions to rehear which challenge the correctness of our original opinion on two grounds.

The first ground contending that this Court failed to take into consideration T.C.A. sec. 52-331(1) (n) merely reargues matters which were not overlooked but were thoroughly considered in reaching our original decision.

■ The second point contends that due process provisions of the Fourteenth Amendment of the United States Constitution are violated because the retailer has no way of determining whether a price set by a competitor (and less than invoice plus eight per cent) is lawful

or not, and if he meets such price and it later turns out to have been unlawful he can be prosecuted under the terms of the Act.

This contention is without merit. The provisions of T.C.A. sec. 52-333 (Supp.1963), sets out the proper procedure to be followed by ''[a]ny person claiming to be injured'' by such a possible violation.

In general this section provides that a party so aggrieved may file an original suit for an injunction and for an award of damages, or he may file a complaint with the Commissioner who ''shall forthwith cause an investigation to be made'' to determine if the price is lawful. The powers given the Commissioners are quite adequate to this end. If, as a result of such investigation and proceeding the ''commissioner concludes that there is no basis for the charge'' and dismisses it, then the retailer can, in good faith, conclude that the price is lawful and lower his price to meet such competition.

The Legislature gave the Commissioner broad and general power in order that he could bear the burden of enforcing the Act at the instance of injured parties or on his own volition, in accordance with the duties and responsibilities imposed upon him by the Act.

For the reasons aforesaid, the petitions to rehear are denied.