**SHULTON, INC., Plaintiff-Appellant,**

v.

**HOGUE & KNOTT, INC., Defendant-Appellee.**

No. 16459.

United States Court of Appeals
Sixth Circuit.

Aug. 18, 1966.

W. Rowlett Scott, Memphis, Tenn. (Armstrong, McCadden, Allen, Braden & Goodman, Memphis, Tenn., of counsel), for appellant.

A. Longstreet Heiskell, Memphis, Tenn. (Frierson M. Graves, Jr., Heiskell, Donelson, Adams, Williams & Wall, Memphis, Tenn., on the brief), for appellee.

Before WEICK, Chief Judge, O'SULLIVAN, Circuit Judge, and CECIL, Senior Circuit Judge.

O'SULLIVAN, Circuit Judge.

Plaintiff-Appellant, Shulton, Inc., appeals from a judgment of the District Court for the Western District of Tennessee which dismissed its complaint asking that defendant-appellee, Hogue & Knott, Inc., be enjoined from selling Shulton products at prices below those scheduled on Shulton's Fair Trade contract.

Shulton is one of the leading national manufacturers of toilet articles and cosmetics. By extensive advertising, amounting to about one-fifth of its yearly gross receipts, it has established a wide public acceptance of such brand names as "Old Spice," "Shulton" and "Desert Flower." In order to have the full benefit of its national advertising, Shulton considers it important that retail outlets prominently and attractively display its products. This, in turn, requires that Shulton products be profitable for the retail merchants, and as a result Shulton has adopted a stringent Fair Trade policy to maintain retail profit margins where possible.

Defendant-appellee, Hogue & Knott, Inc., is a retail supermarket in Memphis, Tennessee. It operates on a small profit margin, relying on a large volume obtained by giving substantial cash discounts on all the products it handles. Hogue is in competition with several other large-volume, low-profit retailers in Memphis. Unlike Hogue, these competitors do not give direct cash discounts, but rather offer such concessions as bonus trading stamps or combination sales. Thus, by giving 100 bonus stamps (with a stipulated value of .025 cents) on a $2.50 purchase, a store effectively establishes a 10% discount. Similarly, by offering a 51 cent bag of sugar for 1 cent if accompanied by a $5.00 purchase, a 10% discount is set up.

Prior to February, 1964, the Shulton Fair Trade contract in force in Tennessee forbade giving any trading stamps or other concessions in connection with Shulton products. In February, 1964, the contract was changed to allow such discounts up to 3% of the list price.[1]

---

1. The revised contract provides: "(4) (c) * * * the 'Retailer' may allow his customers at the time of the sale of the 'commodities', a concession in the form of a cash discount, trading stamps, cash register receipts or other device, provided that such concession shall be extended to all sales by the 'Retailer' (excepting

This provision was adopted to make allowance for the fact that trading stamps had become a way of life in supermarket merchandising. With the adoption of the new contract, Shulton began a vigorous enforcement campaign, including the action against Hogue here involved.

Hogue does not deny that it sold, and continues to sell, Shulton's products below the Fair Trade prices established therefor; however, it asserts two defenses: (1) that the 3% clause has brought Shulton's Fair Trade contract outside the coverage of Tennessee's Fair Trade statute, and (2) that Shulton has made no bona fide effort to enforce compliance with its Fair Trade contract. The District Judge in giving judgment for defendant sustained both such defenses. We reverse.

### 1. The 3% clause.

The Tennessee Fair Trade statute provides:

"No contract relating to the sale or resale of a commodity which bears, or the label or content of which bears, the trade-mark, brand, or name of the producer or owner of such commodity and which is in fair and open competition with commodities of the same general class produced by others shall be deemed in violation of any law of this state by reason of any of the following provisions which may be contained in such contract:

(1) That the vendee will not resell such commodity except at the price stipulated by the vendor." T.C.A. § 69–203

Hogue argues that Shulton, by permitting a sliding scale of prices from the list price down to 3% below the list price, has failed to *stipulate* a price, and further, that if the contract be read as establishing a fixed minimum price of "list" less 3% with allowance for sales above such a minimum, it would also violate the Tennessee statute, which, it asserts, was passed "to prevent price gouging of the public, as well as price cutting in a cutthroat manner by retailers." Contrary to this argument, Fair Trade acts are designed to permit a restricted area of "price gouging" by creating an exemption to the general prohibition of resale price maintenance. The McGuire Act, 15 U.S.C.A. § 45, which exempts Fair Trade laws from the proscription of the Antitrust Act, refers to contracts "prescribing *minimum* or stipulated prices." It is true that the Tennessee Act in defining the contracts permitted, refers, in T.C.A. § 69–203, to "the price stipulated" but in its enforcement section, T.C.A. § 69–204, it makes actionable only "wilfully and knowingly advertising, offering for sale or selling any commodity at *less* than the price stipulated" (emphasis supplied.) While not essential to its decision, the Tennessee Supreme Court, upholding the constitutionality of the State's Fair Trade Act, referred to contracts made thereunder "which have minimum retail prices established." McKesson & Robbins v. Government Emp. Store, 211 Tenn. 494, 497, 365 S.W.2d 890, 891 (1962). It is our view that, given the total context and purpose of the Tennessee Act, a prohibition against selling at less than a fixed price does no violence to the statutory language permitting contracts which prohibit resale "except at the price stipulated by the vendor."

The only case in point cited by appellees, Mennen Co. v. Krauss Co., 37 F.Supp. 161 (D.C.La.1941) construing a parallel Louisiana statute, was subsequently reversed by the Fifth Circuit, Mennen Co. v. Krauss Co., 134 F.2d 348 (CA 5, 1943), on the basis of an intervening decision by the Supreme Court of Louisiana, Pepsodent Co. v. Krauss Co., 200 La. 959, 9 So.2d 303, which construed the statute to allow the fixing of a minimum price.

In holding that the Shulton contract's allowance of a 3% discount by use of

tobacco products and alcoholic beverages) and further provided that the amount or value of such concession shall not exceed

three per cent of the said minimum retail prices."

trading stamps and other concessions disqualified it for the protection of the Tennessee Fair Trade Act, the District Court cited the case of Jantzen, Inc. v. E. J. Korvette, Inc., 219 F.Supp. 604 (S.D.N.Y.1963). We point out that the contract there involved put no limitation on the amount of discount that could be allowed through giving trading stamps and like benefits.

Tennessee has decided that the giving of trading stamps and like benefits is the equivalent of a cash discount. Hogue v. Kroger Co., 213 Tenn. 365, 373 S.W.2d 714 (Tenn.1963). We are of the opinion that the 3% limitation on such benefits in Shulton's contract qualifies it for enforcement under the Tennessee statute.

2. Lack of enforcement by Shulton.

Prior to adopting its 3% clause, in February, 1964, Shulton's Fair Trade contract forbade altogether the giving of trading stamps and like benefits. There was little evidence of earlier attempts to enforce this contract although Hogue was notified in late 1963 that it was in violation. Notwithstanding the fact that the constitutionality of the Tennessee Act had been upheld by the decisions of Frankfort Distillers Corp. v. Liberto, 190 Tenn. 478, 230 S.W. 2d 971 (1950) and Seagrams Distillers Co. v. Corenswet, 198 Tenn. 644, 281 S.W.2d 657 (1955), in 1962 the Chancery Court of Shelby County held the Act unconstitutional upon grounds that were claimed not to have been raised in the earlier cases. This case, however, was reversed in April, 1963, by the decision in Plough, Inc. v. Hogue & Knott, 211 Tenn. 480, 365 S.W.2d 884, 365 S.W.2d 884, which again sustained the constitutionality of the Tennessee Act. In the meantime, the giving of trading stamps and the use of tie-in sales had, as stated above, "become a way of life in supermarket merchandising." In December, 1963, the Tennessee Court resolved the question of whether such practices amounted to price reduction. Hogue v. Kroger Co., supra. This was followed by Shulton's addition of the 3%

clause to its contract and a vigorous campaign to enforce it in Memphis. Shulton employed a Memphis law firm to work with Shulton's own people in investigating violations and giving notice to such establishments as were discovered to be in violation. Such notices were given and compliance obtained from various establishments, although violations were resumed by some. Shulton began three lawsuits, the first of which, the case at bar, was commenced June 11, 1964. Shulton sued Kroger, the third largest national food chain, on July 24, 1964. On September 4, 1964, it brought a third suit, this one against Pic Pac Food Stores, Inc., another large Memphis establishment. Shulton's house counsel testified that in addition to enforcing its Fair Trade contracts, it desired by these lawsuits to obtain an adjudication of the legality of its 3% contract against non-signers. Only Hogue resisted. Kroger consented to a decree enjoining it from violating Shulton's contract, but then chose to cease handling Shulton's products. Kroger was a valued national account of Shulton, but was lost as such in Memphis due to Shulton's enforcement program. Such program had also lost the Kroger business for Shulton in Wisconsin. Pic Pac stores moved to dismiss Shulton's complaint and upon denial of its motion also ceased handling the Shulton fair trade items. Two other large merchandisers, Corondolet and Big M, were complying at the time of the trial. Our review of the record persuades us that there was no basis for a finding that prior to and at the time of the trial of the case at bar, Shulton was not carrying on a vigorous and good faith campaign to enforce its Fair Trade contract. Although there was evidence at the trial of continued selling of Shulton products by some Memphis merchants below the Fair Trade price, the fact that Shulton's enforcement program was not 100% effective does not, by itself, prove lack of good faith.

The burden of Hogue's defense was solely that other stores in the Memphis area were still discounting Shulton's

products up to the date of trial. Mr. Hogue testified that it was his intention to ignore Shulton's fair trade price so long as there was even one other seller who had not been brought into compliance. If this defense were sustained, Shulton would be left in the position of having either to bring simultaneous suits against all violators in the area, or to discontinue sales to all known violators as a precondition to bringing suit against Hogue. This would leave Shulton with little more leverage in states which had availed themselves of their privilege under the Miller-Tydings and McGuire Acts to enact Fair Trade laws than it would have generally under the rule of United States v. Parke Davis, 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960) and United States v. Colgate & Co., 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919). Such a rule would deny Shulton the privilege of suing the most egregious violator to demonstrate to the remaining merchants that it intended its warning letters to be taken seriously.

There was no evidence to justify an inference that Shulton intended anything less than complete compliance with its Fair Trade policy in the Memphis area. It was attempting to achieve this through a step by step process. In the absence of any proof that Hogue had been unfairly singled out to enforce compliance by it, the defense of unreasonable and discriminatory enforcement should not have been sustained. General Elec. Co. v. Home Utilities Co., 131 F.Supp. 838 (D.Md.1955) aff'd 227 F.2d 384 (C.A.4, 1955); Seagram Distillers Corp. v. New Cut Rate Liquors, Inc., 221 F.2d 815 (C.A.7, 1955) rev'd on other grounds, 245 F.2d 453 (C.A.7, 1957); Parke Davis & Co. v. Jarvis Drug Co., 208 F.Supp. 350 (S.D.N.Y.1962); Esterbrook Pen Co. v. Vilarino, 144 F.Supp. 309 (D.P.R., 1956); Revere Copper & Brass v. Economy Sales, 127 F.Supp. 739 (D.Conn., 1954). In the case of Hogue v. Kroger Co., supra, 213 Tenn. 365, 373 S.W. 2d 714, Hogue & Knott Supermarket (a related concern to defendant here) insisted that it had the right to discount milk prices below the price established by Tennessee's Unfair Milk Sales Act because competitors, through the use of trading stamps, were violating the milk statute. In disposing of this contention, the Tennessee Court said:

"We hold that a retailer is not authorized by T.C.A. § 52-334(7) to reduce the price of milk below the statutory minimum in order to meet the unlawful price of a competitor who is selling at a posted price which is the statutory minimum and giving stamps, etc., in violation of the Act." 213 Tenn. 376, 373 S.W.2d 718.

We hold, in conclusion, that Shulton's Fair Trade contract is valid, that Shulton's enforcement program was being carried on without discrimination prior to and at the time of trial, and it is entitled to have Hogue's admitted violation restrained.

The cause is remanded to the District Court for further proceedings consistent herewith.