784

HOGUE AND KNOTT et al., Appellants,

v.

The KROGER COMPANY et al., Appellees.

HOGUE AND KNOTT et al., Appellants,

v.

NATIONAL FOOD STORE OF LOUISI-
ANA, INC., Appellee.

Court of Appeals of Tennessee,
Western Section.

July 14, 1971.

Certiorari Denied by Supreme Court
March 6, 1972.

Petition to Rehear Certiorari Denied
July 3, 1972.

Frierson M. Graves, Jr. and Longstreet Heiskell, Memphis, for appellants; Heiskell, Donelson, Adams, Williams & Wall, Memphis, of counsel.

James W. McDonnell, Jr., Memphis, for appellee Kroger Co., Canada, Russell & Turner, Memphis, of counsel.

J. Martin Regan, Memphis, for appellee Pic-Pac Food Stores; Laughlin, Watson, Garthright, Halle & Regan, Memphis, of counsel.

W. Otis France, Jr., Memphis, for appellees Robilio and Sarno.

J. Lester Crain, Jr., Memphis, for appellee Malone & Hyde; Gianotti, Crain & Bartusch, Memphis, of counsel.

John B. Mack, Memphis, for appellee National Food Stores; Clifton & Mack, Memphis, of counsel.

MATHERNE, Judge.

Chancellor Brooks McLemore, by designation of the Supreme Court of Tennessee, sat on this lawsuit in the absence of Presiding Judge C. S. Carney, Jr.

The complainants and the defendants are competitors in the retail grocery business in Memphis, Tennessee. There is an overlap of interest among some defendants, but basically the defendants are also competitors among themselves.

Two lawsuits are here involved, consolidated for trial and on appeal. In one lawsuit the complainants sued The Kroger Company, Malone & Hyde, Inc., Pic-Pac Food Stores, Inc., and Raymond E. Robilio and Samuel A. Sarno d/b/a Big Star Cash Food Store. These defendants were charged with violating the Unfair Milk Sales Law, T.C.A. §§ 52–331 through 52–334, and the Unfair Frozen Foods Sales Law, T.C.A. §§ 52–335 through 52–341. In the other lawsuit the complainants sued National Food Stores of Louisiana, Inc., charging the defendant violated the two statutes above mentioned and the Unfair Sales Law, T.C.A. §§ 69–301 through 69–306, and the Unfair Cigarette Sales Law, T.C.A. §§ 69–401 through 69–413.

The Original Bills sought an injunction against all defendants restraining any further violation of the statutes referred to, and sought damages allegedly resulting to the complainants due to past and present violations thereof.

The Chancellor heard the cause on oral testimony without a jury. The Chancellor denied the injunction; refused to refer the case to the Master for a finding of the amount of damages suffered; held the complainants not entitled to equitable relief; and dismissed the lawsuits at the cost of the complainants. By six Assignments of Error in this Court, the complainants question the Chancellor's Decree.

Since the trial, and pending appeal, the parties admit National Food Stores of Louisiana, Inc., has ceased to do business in Tennessee. We therefore hold the question of injunctive relief has become moot as to that defendant. Where it appears the act to be enjoined has ceased to exist, an action for an injunction becomes moot, and will be dismissed. Malone v. Peay (1928) 157 Tenn. 429, 7 S.W.2d 40.

The question of damages presents a different issue, and National Food Stores remains before the Court in that aspect of the litigation. When hereafter discussing the defendants we will be referring to all defendants except National Food Stores on matters relating to the injunction; and we will be referring to all defendants in both lawsuits when discussing damages.

The complainants failed to press the charged violations of the Unfair Sales

Law and the Unfair Cigarette Sales Law in the Trial Court. The complainants argue violation of only the statutes relating to milk and frozen desserts in this Court. We therefore narrow the issues to the two last mentioned statutes.

The unlawful practices charged consist of a violation of T.C.A. § 52–332(1) (a), and (4) of the Unfair Milk Sales Law, and of T.C.A. § 52–337 of the Unfair Frozen Dessert Sales Law, the provisions of each statute being similar wherein the following prohibitions are set up: (1) It shall be unlawful for any retailer to sell, advertise or offer for sale within the state of Tennessee any frozen dessert, milk, or milk product for less than cost to such retailer; (2) It shall likewise be unlawful for any person to sell, advertise, or offer for sale any frozen dessert, milk, or milk product, or combination with any other commodity or service at a combined price which is less than the aggregate of the prices for which such frozen dessert, milk, or milk product and such other commodity or service is separately offered for sale.

The cost of the milk or frozen dessert to the retailer is arbitrarily set by statute at a certain per cent above the actual cost to the retailer.

Both statutes, T.C.A. § 52–333, B. 1, and T.C.A. § 52–341, B. 1, (c), provide that any aggrieved person may file an original injunction suit in the chancery court of the county in which the person who violates the provisions of either statute resides to enjoin the further violation thereof, and in such suits if the complainant is found to have been damaged the court may at its discretion decree such aggrieved person damages treble the amount proved.

The alleged wrongful practices complained of (the word milk denoting all controlled products) may be broken down into the following categories:

(1) The sale of milk at the statutory minimum and giving the customer trading stamps based on the amount of the sale.

(2) Advertising the sale of milk at the statutory minimum price without in the same advertisement making a clear, definite statement that no trading stamps will be given on milk purchases.

(3) The giving of extra trading stamps upon a total purchase of a given amount in dollars, without marking up the price of milk to include the cost of the regular stamps and the cost of the extra stamps.

(4) Advertising extra stamps upon a total purchase of a given amount in dollars without in the same advertisement clearly stating milk priced at the statutory minimum cannot constitute a part of the total purchase.

(5) The giving and advertising of discount coupons (for instance 5 pounds of sugar for one cent with a $5.00 purchase) and including milk at the statutory minimum as a part of the total sale to reach the discount amount.

(6) The use of discount coupons on any sale which includes milk at the statutory minimum even though the total purchase of other uncontrolled items exceeds the amount required for the discount.

(7) Advertising and giving one per cent of gross sales to charity without excluding milk priced at the statutory minimum.

Our Supreme Court in Hogue v. Kroger Company (1963) 213 Tenn. 365, 373 S.W. 2d 714, held the sale of milk at the statutory minimum and the giving of trading stamps on the purchase is a violation of the Act in question.

Applying the reasoning in the *Hogue* case, supra, we hold the following practices also to be in violation of the statutes pleaded: (1) The giving of extra or bonus trading stamps on purchases which include the purchase of controlled items at the statutory minimum price. (2) The giving of discount coupons or bonus trading stamps, upon the purchase of a given amount in dollars, and including controlled items at the statutory minimum price as a

part of the total purchase to achieve the total dollar amount to get the discount or bonus trading stamps.

The foregoing conclusions are reached based upon the reasoning that the regular stamps, the extra or bonus stamps, or the discount coupons, no matter how they may be characterized, effectively reduce the price of the controlled item below the statutory minimum. Since the Acts do not authorize discounts of any kind, any practice which reduces the price of the controlled items below the statutory minimum does constitute a violation.

■ The complainants are very insistent the use of discount coupons, or extra bonus trading stamps, on any sale which includes a controlled item sold at the statutory minimum price violates the Acts, even though the total purchase of uncontrolled items exceeds the amount in dollars necessary to obtain the discount or bonus trading stamps. We do not agree.

Complainants here insist the giving of 100 bonus trading stamps, or a discount of 5 pounds of sugar for one cent, on a total purchase of $5.00 cannot be allowed where the total sale of all items equals for instance $9.00, if the customer also at the same time purchases a half gallon of milk at a statutory minimum price of $.58 (58 cents) and that 58 cent purchase is included in the total purchase of $9.00 worth of groceries. This argument is unreasonable, and the practice does not constitute a violation of the Acts. This Court will not require the housewife to go through the "line" a second time to purchase the milk separately, as the complainants argue she would have to do in order for the transaction to be valid.

The established practice of the defendants is to not include the price of milk in any sale on which trading stamps are given. The check-out personnel, where the customer pays for his purchases, are instructed to add on the tape all uncontrolled items purchased, sub-total that amount and give trading stamps on that figure, then the items controlled by the statutes are added to that sub-total for the total sale figure. The check-out personnel are also trained to eliminate from the total sale all items controlled by the statutes and priced at the statutory minimum before determining the total sale for the purpose of redeeming discount coupons or the giving of bonus stamps.

The complainants, in an effort to prove their case against the defendants, induced certain people, including members of the firm of their attorneys, to visit the stores of the defendants and make certain purchases designed to establish the defendants were violating the statutes. The testimony of these "detectives" is rather amusing because at times it appears the defendants' check-out personnel were better at arithmetic than were the investigators.

The record is not clear, but it appears from 400 to 500 trips were made by these investigators to the stores of the defendants over a period of about four to seven years. The result of this effort on the part of the complainants may be summarized:

(1) *Three* purchases made at the Laurelwood Store of defendant National Food Stores of Louisiana on June 15, 1966, December 23, 1965, and August 12, 1966 show the inclusion of excludable items in violation of the Acts. This defendant experienced approximately 4,000,000 transactions per year in its stores under investigation.

(2) The complainant offered evidence of *seven* purchases from defendant Kroger Company which violated the Acts, but somewhat admitted three of these were not violations. Of the other four alleged violations, the December 20, 1965 purchase may have been legal because there could have been sufficient mark-up in the cottage cheese purchased to permit the giving of stamps. On the purchases made September 2, 1965, September 3, 1965, and February 24, 1966 apparent violations of the Acts are reflected. The defendant ex-

perienced approximately 6,000,000 customers per year through its check lanes.

(3) *Two* purchases on January 27, 1965 and January 4, 1965 from defendant Pic-Pac show apparent violation of the Acts.

(4) *One* purchase from Giant (connected with defendant Malone & Hyde) on January 4, 1965; and *one* purchase from Robilio and Sarno on January 4, 1965 show apparent violations of the Acts.

When we consider these purchases were designed to trap the defendants and were made with that intent; there is no identification of the checkout personnel involved; the terrifically high volume of business the defendants experience; the number of trips made by the "investigators"; the period of time covered; and the results obtained, we hold these proven illegal purchases are infinitesimal and do not constitute such violation of the Acts pleaded as would warrant an injunction by a court of equity. In passing on this proof in toto, we are inclined to the view that the sales violations proved, under the circumstances noted, establish substantial compliance with the Acts in question.

We must now consider the alleged advertising violations by the defendants. Both Acts being considered provide in slightly different language that it shall be unlawful for any retailer to *advertise,* sell, or *offer for sale* any product in violation of the Act. T.C.A. §§ 52–332(2) (a) and 52–337.

In the *Hogue* case, supra, the Court was considering the sale of controlled items in violation of the Unfair Milk Sales Law. We hold the reasoning of the Court in that case is equally applicable to the Unfair Frozen Dessert Act. We also hold where the Court in *Hogue* refers to "sell" and "selling", the words "advertise" and "advertising" may be substituted in the consideration of the case at bar.

This construction and interpretation of the advertising prohibition is justified because prohibited advertising can not only be a direct violation of the Acts, but it can be the most deceptive violation thereof; direct wherein it blatantly advertises controlled items below cost, and deceptive wherein it misleads the public into thinking the controlled items are offered below cost when in reality they are not so sold.

The defendants testified that milk and ice cream are consistently sold at the minimum price allowed by law. Sample advertisements are in the record wherein trading stamps are advertised in such manner as to constitute an affirmative offer of these stamps with the purchase of milk. Sample advertisements show milk and trading stamps advertised together in such manner as to infer stamps would be given on purchases of milk. We hold this type of advertising is a violation of the statute. It would be very simple for trading stamp advertisements to clearly state that no stamps would be given on the purchase price of designated controlled items sold at the statutory minimum price. We hold the statute places the duty on the retailer to so state in his advertisement; a failure to so affirmatively state is a violation of the statute.

We further hold there is the affirmative duty on the retailer to state in his advertisement of discount coupons, bonus trading stamps, cash rebates, or any other sales promotion practice requiring the purchase of merchandise, that designated controlled items sold at the statutory minimum price are excluded from the sales total required for the advertised discount, gift, bonus stamps, or cash rebate. The defendants have failed to so state in their advertisements of these sales promotion practices, and this failure constitutes a violation of the statutes.

The evidence establishes that in advertising discount coupons the defendants would sometimes exclude designated controlled items sold at the statutory minimum, at other times they did not; at other times they would exclude certain controlled items

and not exclude all controlled items. The public cannot be expected to know if the controlled item is, or is not, offered at the statutory minimum; the public has the right to rely upon the statutory prohibition against the advertising of controlled items at less than the minimum price. The duty to clearly and unconditionally comply with the statutory advertising prohibition is just as compelling upon the retailer as is the duty to so comply with the statutory sale prohibition.

The evidence establishes the defendants have violated the statutes in their advertising practices. The violation has been deliberate, consistent, and flagrant. The violations established are such as to justify an injunction issue to restrain any further violations. This finding raises the question of whether injunctive relief is available to the complainants under the facts of this lawsuit.

The testimony of Mr. Hugh H. Hogue, who handles all purchasing and advertising of the Hogue and Knott Supermarkets, reveals the complainants deliberately violate daily the Unfair Sales Law, T.C.A. §§ 69–301 through 69–306, by selling and advertising items at less than cost as defined in that statute; the complainants also violate and plan to continue to violate the Fair Trade Law, T.C.A. § 69–201 through 69–205, wherein they sell and advertise fair trade items at a price below the contract minimum; the complainants advertise a whole bag of groceries free upon certain conditions being met, and the advertisement does not exclude designated controlled items sold at the minimum statutory price; the complainants advertise Prestone Antifreeze at a discount upon the purchase of a stated amount in dollars, and do not exclude in the advertisement designated controlled items sold at the statutory minimum price, neither do the complainants require the purchasers to go through the "line" twice if a controlled item is purchased with other items, when the uncontrolled items equal the required purchase. In short, the complainants admit the same

practices which they seek to enjoin the defendants from following, plus the violation of two additional statutes.

To enjoin the defendants would be to approve the illegal practices of the complainants. There is a strong public interest in the statutes being considered. Where, as here, the lawsuit concerns the public interest as well as the private interests of the litigants, a court of equity will not lend its aid to the complainant in such manner as to permit that party to enjoy the fruits of his transgressions at the expense of the public, and at the same time subject his adversary to the close supervision of the injunctive process. It is readily apparent an injunction as prayed would endorse a flagrant violation of statutes designed to protect the public interest; the effect of the injunction could be much more harmful than the existence of the wrong enjoined.

In considering this aspect of the case the Chancellor observed:

"Surely to require the Defendants to cease a practice, engaged in by the Complainant under another guise, would be to say the least, an abuse of discretion. To allow one merchant a free hand to entice customers by a violation of one statute and hamstring another for identical violations under a similar law cannot be the acme of equity."

We agree with the Chancellor that injunctive relief be denied the complainants, because the injunctive process is unavailable to intimidate citizens and to harrass business competitors; a court of equity in good conscience would be required, under the record, to enjoin the complainants as well as the defendants. These circumstances are foreign to the equitable writ of injunction.

We would observe, without deciding any future litigation, the Commissioner of Agriculture has broad and extensive powers to enforce these statutes. Had that branch of the executive department instituted this lawsuit against all parties hereto,

the Chancellor would have had a different proposition before him.

The only defendant charged with giving one per cent of sales to charity as violative of the statutes was the defendant National Food Stores of Louisiana, Inc. We have heretofore held the issue of an injunction as to that defendant is moot. We therefore make no decision upon the issue of whether the advertising and giving to charity one per cent of sales including controlled items sold at the statutory minimum violates the statutes.

■ On the issue of damages, we hold the Chancellor correctly refused to refer the case to the Master for a determination of the amount of damages suffered by the complainants. This conclusion is based upon the fact that the complainants did not prove they were damaged by the conduct of the defendants including all alleged misconduct of National Food Stores of Louisiana, Inc.

The complainants presented proof that a grocery business of the type in which they are engaged should realize a 5% per year increase in volume; they did not realize a 5% per year increase in volume for the period under consideration, and argue this fact constitutes proof they were damaged by the defendant's violation of the statutes. Complainants insist the matter should therefore be referred to the Master to determine how much they were so damaged.

Without going into detail as to the insufficiency of the complainants' proof that they were damaged by the conduct of the defendants, or citing any authority concerning proof of damage, or considering the many factors other than the defendants' conduct which could have affected complainants' volume of business, we hold the complainant failed to prove they were damaged by the conduct of any of the defendants. We also reach this conclusion without considering the equities of whether a complainant is entitled to damages resulting from unlawful acts of the defendant, when the complainant is equally guilty of the same or similar unlawful acts. Suffice to say the complainants were not entitled to a reference to the Master on the issue of damages.

It results all Assignments of Error are overruled, the decree of the Chancellor dismissing the complainants' suits with prejudice is affirmed. Cost of this appeal is adjudged against the complainants.

NEARN, J., and McLEMORE, Special Judge, concur.