## IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

METRIC PARTNERS GROWTH        )
SUITE INVESTORS, L.P.,        )
                             )
    Plaintiff/Appellee,        )
                             )
VS.                          )
                             )
NASHVILLE LODGING COMPANY;    )    Appeal No.
2300 ELM HILL PIKE, INC.,     )    01-A-01-9712-CH-00723
                             )
    Defendant/Appellant,       )    Davidson Chancery
                             )    No. 96-1405-III
and                          )
                             )
ORLANDO RESIDENCE, LTD.; and  )
LA SALLE NATIONAL BANK as     )
trustee under that certain pooling )
and servicing agreement dated )
July 11, 1995, for the holders of the )
WHP Commercial Mortgage Pass )
Through Certificates, Series 1995C1, )
and ROBERT M. HOLLAND, JR.,   )
Trustee,                     )
                             )
    Defendants/Appellants.     )

APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE ROBERT S. BRANDT, CHANCELLOR

ALAN T. FISTER
STEWART, ESTES & DONNELL
424 Church Street
Nashville, Tennessee 37219-2392

MIKE BUCKLEY
CROSBY, HEAFEY, ROACH & MAY
1999 Harrison Street
Oakland, California 94604-2084
    Attorneys for Plaintiff/Appellee

SAMUEL L. FELKER
JOSEPH F. WELBORN, III
BASS, BERRY & SIMS
2700 First American Center
Nashville, Tennessee 37238-2700
    Attorneys for Defendant/Appellant

EUGENE N. BULSO, JR.

BOULT, CUMMINGS, CONNERS & BERRY
414 Union Street
Nashville, Tennessee 37219-8062
    Attorney for Defendant/Appellee Orlando Residence, Ltd.

KENNETH M. BRYANT
TRABUE, STURDIVANT & DEWITT
522 Union Street
Nashville, Tennessee 37219-1738

HUNTER T. CARTER
ARENT, FOX, KINTNER, PLOTKIN & KAHN
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5339
    Attorneys for Defendants/Appellees LaSalle National Bank
    and Robert M. Holland


AFFIRMED AND REMANDED



                                        BEN H. CANTRELL, JUDGE


CONCUR:
TODD, P.J., M.S.
CAIN, J.

# **O P I N I O N**

The owner of a hotel subject to a first mortgage sold the building and its contents to the plaintiff and took a second mortgage to secure the purchase price. The plaintiff also operated the hotel under a ground lease with the owner. When the owner failed to pay the first mortgage, the plaintiff sought a declaratory judgment that the owner was in default, that the plaintiff could pay the first mortgage directly to the mortgagee, and that the plaintiff was discharged from its obligation to the owner. The owner resisted the declaration on the ground that it had certain defenses against the first mortgagee. The Chancery Court of Davidson County granted summary judgment to the plaintiff. We affirm.

## I.

In 1983 National Lodging Company (NLC) borrowed the money to finance the construction of a Marriott Hotel in Nashville. NLC signed a note and deed of trust giving the lender a first mortgage on the property. The original lender went into receivership and the note became the property of the Resolution Trust Corporation. The note passed through two other hands before it was finally transferred to LaSalle National Bank, and it is referred to throughout the record as "the LaSalle note."

In 1989 NLC sold the hotel improvements to the plaintiff, Metric Partners Growth Suite Investors, L.P., and entered into a long term ground lease with Metric. Metric executed a note to NLC secured by a deed of trust on the hotel improvements. Thus, Metric made monthly payments to NLC and NLC made the payments on the first mortgage.

As a part of the 1989 transaction, Metric, NLC, and the original lender entered into a three party agreement. The agreement provided that in the event NLC defaulted on the payments on the first mortgage (1) the lender would notify Metric of the default and Metric could cure the default within ten days after receiving the notice, and (2) Metric could then assume NLC's obligations under the first mortgage and be discharged from any further obligations to NLC on the second mortgage.

In January of 1996 (for reasons we will discuss in a later part of this opinion) NLC failed to make its payment to LaSalle, and filed a bankruptcy petition in the United State Bankruptcy Court for the Eastern District of Wisconsin. On April 5, 1996 LaSalle notified Metric of the default. On April 15, 1996 Metric cured the default by making the required payment directly to LaSalle. At the same time Metric notified NLC that Metric was exercising its rights to pay LaSalle directly under the three party agreement, and that NLC should void the second mortgage. When NLC refused to honor that arrangement and threatened to foreclose on the second mortgage, Metric filed this action seeking declaratory and injunctive relief. NLC's defense rested on the following assertions: (1) that it had a defense against LaSalle's collection of the note; (2) that it had a bad faith and unclean hands defense against Metric; (3) that it was not in default on the LaSalle note; and (4) that the three party agreement did not afford Metric relief from the second mortgage.

## II.

### The Recoupment Defense

NLC asserts that it was not in default on the LaSalle note because it had a $1,700.00 judgment against the Resolution Trust corporation (RTC), one of the holders in LaSalle's chain of title. The obligation arose when the RTC became the receiver for the original lender and repudiated a refinancing agreement NLC had with the original lender. NLC recovered the judgment against RTC as compensation for

- 4 -

the breach. Since LaSalle's status as a holder in due course is disputed, we will assume that this defense, if it exists, may be asserted against LaSalle.

The recoupment question was litigated in the case that established NLC's claim against the RTC. NLC asked for a declaration that it had a right to set-off or recoupment against the purchaser of the note from the RTC. The D.C. Circuit held that the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA) allowed the RTC to sell the assets of a failed thrift free and clear of any encumbrances arising from a borrower's counterclaims; and that the purchaser of the NLC note did not assume the claim against the RTC. Therefore, NLC could "recover these amounts only from the RTC in its primary claim for damages." *Nashville Lodging Co. v. Resolution Trust Corp.*, 59 F.3d 236 at 247 (D.C. Cir. 1995).

We recognize, however, that NLC's position in this case rests on a distinction between a defense to the note and a claim against the assignee of the note. The D.C. Circuit acknowledged that such a distinction might be made, but the court refused to address it because NLC had not raised it in that case. *See* 59 F.3d at 247. Thus the precise question raised here was not decided by the court in the litigation between NLC and RTC.

Other courts have allowed a recoupment defense to a note when an assignee has sued to collect the note. *See FLSIC v. Mackie*, 962 F.2d 1144 (5th Cir. 1992); *DiVall Insured Income v. Boatmen's First Nat'l Bank*, 69 F.3d 1398 (8th Cir. 1995). A recoupment defense, however, even against a non holder in due course, must arise out of the same transaction that gave rise to the instrument. *See* Tenn. Code Ann. § 47-3-305(a)(3); *Howard v. Abernathy*, 751 S.W.2d 432 (Tenn. App. 1988). NLC concedes that the claim against the RTC arose out of the refinancing agreement, a contract separate from the note. Therefore, we are satisfied that the recoupment defense was not available to NLC, regardless of whether RTC had the power to strip defenses from the assets it sells.

### III.

### NLC'S Default and Notice

We have dealt with NLC's argument that it was not in default because of the recoupment defense. Without that defense, NLC must concede that it was in default for not making the January and February payments in 1996. It also must concede that LaSalle gave notice of the default by letter on April 5, 1996. Therefore, the two conditions precedent to Metric's action in curing the default are met. The "other" defaults alluded to by the chancellor, of which NLC alleges it had no notice, are now beside the point.

### IV.

### The Three Party Agreement

NLC makes a similar argument with respect to Metric's rights under the three party agreement, i.e., that because NLC was not in default, Metric could not assume the NLC note and be free of the second mortgage. Our discussion in Parts II and III of this opinion disposes of this argument as well.

### V.

### The Bad Faith and Unclean Hands Defenses

NLC traces its ill fortune to an alleged breach of a 1993 settlement agreement entered into by NLC, Metric, and others in the California Superior Court at San Francisco. To settle some litigation unrelated to the Nashville property, Metric agreed to purchase the Nashville property "as is, including but not limited to title issues." The settlement fell through, however, when Metric discovered that NLC's title was clouded by two actions filed in Nashville to set aside fraudulent conveyances by NLC and by some lien claims that had been filed against the property. NLC sued

Metric in chancery court in Nashville for breach of the settlement agreement and obtained a judgment of liability. The damages have apparently not been ascertained.

NLC's difficulties intensified in 1995 when Orlando Residence, Ltd. obtained a judgment against NLC for a fraudulent conveyance. Metric was one of the defendants in that litigation and one of the claimed fraudulent conveyances was the sale of the hotel to Metric in 1989. After obtaining the judgment, Orlando served a notice of garnishment on Metric in December of 1995. On January 2, 1996 NLC filed its petition in bankruptcy. Metric filed an interpleader in the bankruptcy court and tendered to the court its January 1996 payments under the ground lease and the second mortgage. The interpleader alleged that Metric would continue to make its payments to the court until further orders.

This court reversed the judgment in favor of Orlando on December 18, 1996, and the cause was remanded for a retrial on all issues. On remand the trial court held that Orlando was, nevertheless, a bona fide purchaser of the property at a prior foreclosure sale. The net result is that Orlando is now the owner of the property previously owned by NLC.

On February 13, 1996 the bankruptcy court dismissed NLC's petition because it was filed in bad faith. As we have indicated, LaSalle declared a default in April of 1996 and Metric claimed its rights under the three party agreement.

NLC's bad faith and clean hands defenses are primarily based on Metric's failure to abide by the settlement agreement in the California litigation. The rule NLC relies on has been stated in many Tennessee cases. It can be found in its distilled form in *Gibson's Suits in Chancery* §18:

> This maxim declares that a plaintiff who has been guilty of unconscientious conduct or bad faith, or has committed any wrong, in reference to a particular transaction, cannot have the aid of a Court of Equity in enforcing any alleged rights growing out of such transaction. In the origin of the

jurisprudence, the theory was adopted that a Court of Equity interposed only to enforce the requirements of good conscience and good reason as to matters not equitably determinable in the Law Courts. This interposition being deemed a matter of grace, it would not be exercised in favor of a person whose conduct in the matter complained of had been unconscientious, or in bad faith, or who had violated any of those principles of Equity and righteous dealing, which the Court had been constituted to enforce.

Although used chiefly in cases seeking equitable relief, the bad faith/clean hands defense has been held to apply to legal claims, *Continental Bankers Life Ins. Co. v. Simmons*, 561 S.W.2d 460 (Tenn. App. 1977). But the unconscientious conduct must arise out of the particular transaction which is the subject of the litigation. *Hogue v. Kroger Co.*, 373 S.W.2d 714 (Tenn. 1964).

The California litigation does have a connection to the Nashville property since Metric was to purchase the property as part of that agreement. But the legal rights and liabilities involved in that litigation were entirely separate from the financing of the Nashville property or the 1989 three party agreement.

NLC argues that Metric's failure to purchase the Nashville property forced NLC into default. That may or may not be true, but that claim is the subject of a separate action for which NLC is seeking a judgment for damages. We assume that its damages claim will include its losses resulting from its default on the LaSalle note.

For all of these reasons, we affirm the chancellor's decision to disallow the good faith/clean hands defense.

Finally, there are no facts in this record from which an inference could be drawn that Metric acted in any way except in accordance with its best business judgment. That does not mean that it is free of a claim that it violated NLC's legal rights. But it does mean that there is no proof that would meet the burden NLC has to meet.

The judgment of the court below is affirmed and the cause is remanded to the Chancery Court of Davidson County for any further proceedings that may become necessary. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL, JUDGE

CONCUR:

_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION

_____
WILLIAM B. CAIN, JUDGE