IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 5, 2002 Session

## LOUIS BROOKS v. LEE CREECH, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 99-3361-I    Irvin H. Kilcrease, Jr., Chancellor**

_____

**No. M2001-02355-COA-R3-CV - Filed January 28, 2003**

_____

This matter involves a fraudulent transfer of real property and violation of Tennessee's Consumer Protection Act occurring as a result of Plaintiff's attempt to obtain a loan using his real property as collateral. In return for a loan of $4000.00, Plaintiff quit claimed his home as collateral and gave Defendant Creech physical possession of the promissory note in exchange for the loan. Defendant Stigall, who had office space in the same office, was listed as trustee of the property and payee on the promissory note. She then represented herself to First American Bank as owner of the property and wife of Defendant Creech, obtaining a loan for $42,000.00 and offering Plaintiff's property as collateral. The trial court found that Defendants Stigall and Creech were involved in a conspiracy and that they violated the Tennessee Consumer Protection Act and defrauded Plaintiff and First American Bank (now AmSouth Bank). The court reformed the Quitclaim Deed into a Deed of Trust, giving the bank a subrogation in the $4000.00 owed to Defendant Stigall. Only Defendant Stigall appeals. We affirm the trial court's decision in its entirety.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and JOHN H. GASAWAY, III, SP. J., joined.

Thomas J. Drake, Jr., Nashville, Tennessee, for the appellant, Buffy Stigall.

Jerry Gonzales, Nashville, Tennessee, for the appellee, Louis Brooks.

**OPINION**

Plaintiff/Appellee Louis Brooks went to Defendant Lee Creech to obtain a $4000 loan, signing a quitclaim deed in favor of Defendant Buffy Stigall as collateral for the loan. Defendant Creech, who was also a real estate agent, took a promissory note from Brooks payable to Stigall in addition to the Quitclaim Deed as security for this loan. Defendant/Appellant Buffy Stigall was a loan originator who shared office space with Defendant Creech and who was romantically involved

with him at the time of the alleged fraud. On the day following the $4000.00 loan to Plaintiff, Stigall presented herself to First American National Bank as owner of the property and as Creech's wife. She took out a loan for $42,000.00 using Plaintiff's property as collateral and representing that she intended to occupy the property as her permanent address. Defendant AmSouth Bank, formerly First American National Bank, became the holder of a Deed of Trust on Plaintiff's property as security for the $42,000 loan made to Stigall.

Plaintiff filed suit alleging that he was fraudulently induced into signing the Quitclaim Deed in favor of Buffy Stigall, believing and intending it to be a Deed of Trust securing the $4000.00 promissory note. Defendants Creech and Stigall were initially represented by the same attorney, who filed an Answer for both parties, but he later withdrew as their attorney due to lack of communication with Defendants. Defendant Creech never hired new counsel, and a default judgment was entered against him.

Defendant Stigall filed a cross-claim against Defendant Creech requesting a judgment against Creech for any and all sums that Stigall would owe should Plaintiff prevail. She alleged ignorance of the loan transaction between Plaintiff and Creech, denied any fraudulent inducement in obtaining Plaintiff's signature on the Quitclaim Deed, and denied committing fraud against AmSouth Bank.

On April 19, 2000, Defendant Stigall was served with AmSouth's First Request for Admissions. Stigall never objected to nor answered these Requests. On April 26, 2001, AmSouth filed a Motion in Limine to Deem Admission Requests as Admitted. The trial court granted this Motion deeming the Request for Admissions admitted.

The case was heard without a jury on May 22, 2001, following which the judge issued a Memorandum of his findings as follows:

> This cause of action came on for trial before the Court, without the intervention of a jury.
> Plaintiff Louis Brooks (hereinafter "plaintiff") filed a complaint against the defendants Lee Creech, Buffy Stigall and AmSouth Bank, the Successor by merger to First American National Bank, seeking to have a Quitclaim Deed reformed to a mortgage or Deed of Trust; to have declared void defendants Lee Creech's and Buffy Stigall's Deed of Trust, which conveyed certain property to First American National Bank; and that defendants Lee Creech and Buffy Stigall be found liable to the plaintiff for common law fraud, consumer fraud under the Consumer Protection Act, and for treble damages and attorney's fees.
> Default Judgment was granted in favor of the plaintiff against defendant and counter-plaintiff Lee Creech on the issue of liability. Defendant Creech failed to make an appearance at the scheduled trial of this case, on May 8, 2001, at 9:00 a.m. Further, defendant Lee Creech's counter-claim against plaintiff Louis Brooks was dismissed, because defendant Lee Creech failed to prosecute his counter-claim.

Default Judgment was granted in favor of AmSouth Bank on its cross-claim against cross-defendant Lee Creech, on the issue of liability.

Defendant Buffy Stigall's cross-claim against cross-defendant Lee Creech was severed from the instant action for later disposition by the court.

## Findings of Fact

1. Prior to the occurrence of the facts alleged in this cause of action, plaintiff Louis Brooks was the owner of certain real property located at 408 South Greenwood Street, in Lebanon, Wilson County, Tennessee. This property was the same property conveyed to the plaintiff by deed of record in Deed Book 204, Page 34, in the Register's Office of Wilson County.

2. On December 7, 1998, plaintiff and his friend, Anithia G. Bostic borrowed Four Thousand Dollars ($4,000.00) from defendant Lee Creech. The loan was secured by a Promiss[o]ry Note ("Note") (Exhibit #2) payable to defendant Buffy Stigall as "Trustee," and a Quitclaim Deed (Exhibit #7) conveying the plaintiff's real property to defendant Buffy Stigall.

3. During the transactions between plaintiff and defendant Lee Creech, defendant Buffy Stigall maintained her office in defendant Creech's office. Also, defendant Creech and defendant Stigall were involved in a romantic relationship.

4. Defendant Buffy Stigall was a Mortgage Originator. She holds a Bachelor Degree and she is knowledgeable and experienced in the mortgage loan business.

5. Defendant Lee Creech is a real estate broker.

6. Defendant Buffy Stigall was present at the office of the Notary Public when plaintiff executed the Promiss[o]ry Note and Quitclaim Deed.

7. Plaintiff Louis Brooks is age 72, retired and has a ninth (9th) grade education.

8. The first monthly payment under the note was due on January 1, 1999. However, plaintiff was unable to make timely payments in the note, because defendant Lee Creech moved his office without advising plaintiff as to where the payments were to be made.

9. On December 8, 1998, defendant Buffy Stigall made application with First American National Bank for a mortgage loan that was to be secured by the plaintiff's property.

10. Defendant Buffy Stigall fraudulently misrepresented to First American National Bank that she was married, and intended to occupy the property as her permanent residence.

11. Defendant Buffy Stigall never occupied the property nor did she even make demand on plaintiff Louis Brooks to pay rent for the use of the property or for possession of the property.

12. By Promissory Note and Deed of Trust dated 1/16/99, defendant Buffy Stigall borrowed Forty-two Thousand Dollars ($42,000.00) from First American National Bank and granted the Bank a security interest in plaintiff's property.

13. Defendant Lee Creech signed the Deed of Trust (Exhibit #13) conveying to First American National Bank any interest, marital or otherwise he might have had in the plaintiff's property.

14. Plaintiff Louis Brooks continues to remain in possession of the property.

## Conclusions of Law

In consideration of the above findings of fact, the court makes the following conclusions of law:

1. It was the intentions of plaintiff Louis Brooks, defendants Lee Creech and Buffy Stigall, as reflected by the Promiss[o]ry Note (Exhibit #2) that the deed securing the payment of the note be considered a Deed of Trust therefore, the Quitclaim Deed (Exhibit #7) is reformed accordingly.

2. The Deed of Trust (Exhibit #13) conveyed to First American National Bank is champertou[]s and therefore, void. *Tenn. Code Ann.* §66-4-201 et seq.

3. Defendants Lee Creech and Buffy Stigall knowingly, deliberately and fraudulently misled the plaintiff into believing that he was executing a Deed of Trust or a mortgage on his real property.

4. Defendants Lee Creech and Buffy Stigall engaged in a concerted action and/or civil conspiracy to fraudulently, represent to the First American National Bank that defendant Stigall was the fee simple owner of the property.

5. Under the theory of equity of subrogation the Bank is subrogated to the position of defendant Buffy Stigall as holder of plaintiff Louis Brooks' note, dated December 7, 1998, in the amount of $4,000.00. The proceeds from the Bank's collection of the note shall be credited against any judgement obtained by the Bank against defendant Stigall and defendant Creech.

6. Neither defendant Lee Creech or defendant Buffy Stigall owned the property or had authority to encumber the property, beyond the $4,000.00 loan.

7. The Bank is entitled to a judgement against the defendant Buffy Stigall for the unpaid balance of the January 6, 1999 note (exhibit #12) and reasonable attorney's fees.

8. The Bank is entitled to a judgment against defendant Lee Creech for the unpaid balance of the January 6, 1999 note (Exhibit #12) and reasonable attorney's fees, based on this Court's finding that defendant Creech was party to a civil conspiracy to defraud.

9. Defendants Creech's and Stigall's conduct in their transactions with plaintiff Louis Brooks was unfair and deceptive and therefore, violated the Tennessee Consumer Protection Act of 1977, *Tenn. Code Ann.* §47-18-101 et seq. Thus, plaintiff Louis Brooks is entitled to his reasonable attorney's fees, pursuant to *Tenn. Code Ann.* § 47-18-109-(e)(1) against defendants Creech and Stigall.

The attorneys for the plaintiff Louis Brooks and defendant/cross-claimant AmSouth Bank shall submit to the court affidavits in support of their requests for attorneys' fees.

The attorneys for plaintiff Louis Brooks and defendant/cross-claimant AmSouth Bank shall prepare orders consistent with this Memorandum.

Court cost are taxed separately and jointly against defendants Lee Creech and Buffy Stigall.

The Memorandum was amended by Order of July 31, 2001 to add the following:

This case came before the court on motion of the defendant/cross-claimant Buffy Stigall ("Stigall") to Alter or Amend the Judgment. The Court treats Stigall's motion as a motion to amend the Memorandum Opinion, filed on June 22, 2001.

Stigall objects to various findings of fact and conclusions of law made by the court in the said Memorandum. However, the court finds Stigall's objections to be without merit except, her objections to the statement on page 2, of the Memorandum, "Defendant Buffy Stigall's cross-claim against cross-defendant Lee Creech was severed from the instant cause of action for later disposition by the court." This statement is incorrect. The Court granted Stigall's motion for a default judgment against cross-defendant Lee Creech, at a prior hearing. At the trial of this case, Stigall testified about her claim for damages against Lee Creech. Stigall testified that she made two (2) payments of $14,000.00 each to Lee Creech for the purchase of plaintiff's Louis Brooks' property. Stigall's testimony is uncorroborated.

Further, Stigall seeks a judgment against Lee Creech for the amount of the judgement rendered against her in favor of the plaintiff Louis Brooks. That judgment was the reformation of the Quitclaim Deed which returned title to the property to Plaintiff Brooks and the amount of $6,159.15 which represents the award to plaintiff Louis Brooks for his attorney's fees incurred in this case.

The court finds Stigall's testimony not-credible. She was a co-conspirator in a scheme to defraud plaintiff Louis Brooks of his property. Stigall's cross-claims are barred by the docrine of unclean hands. Therefore, a Court of Equity will not aid her in enforcing any of her alleged rights. *Metric Partners Growth Suite Investors, L.P. v. Nashville Lodging Co.*, 989 S.W.2d 700, 703 (Tenn. App. 1998).

Stigall presented the following issues for our review: (1) Was the trial court correct to deem unanswered Request for Admissions propounded to Defendant Stigall admitted? (2) Did the trial court err in finding that Defendant Stigall defrauded Plaintiff? (3) Did the trial court err in finding that Defendant Stigall violated the Tennessee Consumer Protection Act? (4) Did the trial court err in denying judgment to Defendant Stigall against Defendant Creech?

Stigall claimed that the Request for Admissions was served only on her counsel and that she never received it due to Creech's intervention; thus, she did not have an opportunity to answer, and they should not have been deemed admitted. At the time the Request for Admissions was sent, Stigall was represented by an attorney, and the Request was properly sent to her attorney. *See Braswell v. Carothers*, 863 S.W.2d 722 (Tenn. App. 1993). The attorney ultimately withdrew from the case due to Stigall and Creech's failure to communicate with him, evidencing her own neglect

in this matter. The Court held these Requests admitted as a result of Stigall's failure to respond. *See* Tenn. R. Civ. P. 36.01 & 36.02; *See also Tennessee Dep't of Human Servs. v. Barbee*, 714 S.W.2d 263 (Tenn. 1986); *Neeley v. Velsicol Chemical Corp.*, 906 S.W.2d 915 (Tenn. Ct. App. 1995). The Requests were properly deemed admitted since they were served on her attorney and unanswered within the time required.

Stigall argued that she could not have defrauded Plaintiff since she never talked to him and made no representations to him. She also claimed that there was no evidence to support any conspiracy with Creech. Under Tennessee Rule of Appellate Procedure 13(d), our review of this matter is *de novo* with a presumption that the trial court's findings are correct unless a preponderance of the evidence is to the contrary. Further, the issues in this case turn on the court's determination of credibility. Where issues of credibility and weight of oral testimony are involved, deference is given to the findings of the trial court that actually heard the testimony of the witnesses and observed their manner and demeanor. *Kellerman v. Food Lion, Inc.*, 929 S.W.2d 333 (Tenn. 1996).

The evidence demonstrates and the trial court found that Stigall was in the office during the loan to Creech, that she handled some of the paperwork and that she was listed as "trustee" on the Promissory Note. Furthermore, the two checks cashed for payments made on the loan were made out to Buffy Stigall. The evidence certainly does not preponderate against the finding that Stigall and Creech conspired to defraud Brooks. The trial court found Stigall uncredible, and the evidence, including her romantic relationship with Creech, Stigall's presence in the office, and her participation as 'trustee,' was enough to support the court's findings.

The evidence further demonstrated that she failed to treat the property as if she owned it. She had extensive experience in mortgages and loan closings yet there was no contract of sale, no home inspection, and no title opinion. She never obtained the keys to the property and never asked Plaintiff to vacate the premises.

The evidence is more than adequate to support the court's finding of conspiracy and fraud. *See Brown v. Birdman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001); *Lamb v. Megaflight, Inc.*, 26 S.W.2d 627, 630-31 (Tenn. Ct. App. 2000); *Holt v. American Progressive Life Ins.*, 731 S.W.2d 923, 927 (Tenn. Ct. App. 1981). This finding is supported even without any direct communication between Plaintiff and Stigall, as the misrepresentation of a co-conspirator can be attributed to his partner in the conspiracy. *Brown*, 42 S.W.3d at 67; *see also Kirksey v. Overton Pub. Inc.*, 739 S.W.2d 230, 236-37 (Tenn. Ct. App. 1987).

The Consumer Protection Act applies to the sale of real estate, *Ganzevoort v. Russell*, 949 S.W.2d 293, 297 (Tenn. 1997), and Creech is a licensed realtor. The Act has also been applied to loan transactions. *See Turner v. E-Z Cashing of Cookeville, TN, Inc.*, 35 F.Supp.2d 1042, 1051-52 (M.D. Tenn. 1999) (cited with approval by *Hathaway v. First Family Fin. Serv., Inc.*, 1 S.W.3d 634, 643 (Tenn. 1999)). Stigall was 'trustee' of the property and was engaged with Creech in the conspiracy to defraud Plaintiff; she is guilty of the same acts of consumer fraud.

Due to her participation as a co-conspirator in the fraud, Stigall is barred from recovering from Creech under the doctrine of unclean hands. *See Metric Partners Growth Suite Investors, L.P. v. Nashville Lodging Co.*, 989 S.W.2d 700 (Tenn. Ct. App. 1998). Stigall was not a credible witness and found to be a co-conspirator with Creech. Correctly finding her with "unclean hands," the trial court was justified in declining to lend aid to her.

The judgment of the trial court is affirmed with costs assessed to Appellant. The case is remanded to the trial court for such further proceedings as may be necessary.

_____
WILLIAM B. CAIN, JUDGE